SHARLENE D. LEE, ESQ., SB#274033
slee@npwlaw.com
ALISA S. EDELSON, ESQ., SB#216269
aedelson@npwlaw.com
NEVERS, PALAZZO, PACKARD,
WILDERMUTH & WYNNER, PC
31248 Oak Crest Drive, Suite 200
Westlake Village, California 91361
Telephone: (818) 879-9700
Facsimile: (818) 879-9680

Attorneys for Plaintiff Virun, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| VIRUN, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>CYMBIOTIKA LLC, a limited liability company; CHERVIN JAFARIEH, an individual; SHAHAB ELMI, an individual; and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO.: 8:22-cv-00325-SSS(DFMx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Discovery Cutoff: None Set<br>Trial Date:        None Set |

Plaintiff Virun, Inc. ("Plaintiff" or "Virun") hereby sues defendants Cymbiotika LLC ("Cymbiotika"), Chervin Jafarieh ("Jafarieh"), Shahab Elmi ("Elmi"), and Does 1-10, for claims for relief of misappropriation of trade secrets under the Defend Trade Secrets Act, breach of contract (against Cymbiotika), breach of the implied covenant of good faith and fair dealing, and declaratory relief, and alleges:

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1331 because the matter in controversy includes the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. section 1836 *et seq.*, which is a claim for relief arising under the laws of the United States.  The pendent state law claims are so related to the federal

1
FIRST AMENDED COMPLAINT

claims that they form part of the same case or controversy pursuant to Article III of the United States Constitution. This Court therefore has supplemental jurisdiction over those claims pursuant to 28 U.S.C. sections 1338(b) and 1367(a).

2. Venue properly lies in this District pursuant to 28 U.S.C. section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District. Additionally, the written agreement at issue in this complaint was made and entered into in this District, was to be performed in this District, and the effects of the other conduct alleged herein were suffered by Plaintiff in this District.

3. This Court has personal jurisdiction over defendants because defendants' contacts have been sufficient to subject them to personal jurisdiction in this District. Plaintiff is informed and believes that defendants do business in this District, and that defendant Jafarieh resides in this District

## PARTIES

4. Plaintiff is now, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the City of Pomona, State of California. Plaintiff was authorized to do business, and at all relevant times was and is doing business, in the County of Los Angeles, State of California, including without limitation, the transactions described in this Complaint. Accordingly, jurisdiction is proper in this Court.

5. Plaintiff is informed and believes and on that basis alleges that defendant Cymbiotika is now, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in the City of San Diego, County of San Diego, State of California. Cymbiotika is a former buyer of Plaintiff's products. It does business in Los Angeles County, California and its products are sold in Los Angeles County, California.

6. Plaintiff is informed and believes and on that basis alleges that defendant Jafarieh is now, and at all times herein mentioned was, an individual

residing in the City of Laguna Beach, County of Orange, State of California. Jafarieh is a founder and member of Cymbiotika. Plaintiff is also informed and believes that Jafarieh is doing business in California.

7. Plaintiff is informed and believes and on that basis alleges that defendant Elmi is now, and at all times herein mentioned was, an individual residing in the City of San Diego, County of San Diego, State of California. Elmi is a founder and the CEO of Cymbiotika. Plaintiff is also informed and believes that Elmi is doing business in California.

8. Plaintiff is informed and believes, and on that basis alleges, that at all times relevant herein, defendants and Does 1 through 10, inclusive, were the alter ego of each other and each of them, and that such a unity of interest and ownership existed between them that separate personalities have not in reality existed; and there would be an inequitable result if the acts and omissions at issue in this case were treated as those of any of the defendants and Does 1 through 10 alone. Plaintiff is further informed and believes that the defendants and Does 1 through 10 commingle funds and assets among themselves, that the defendants and Does 1 through 10 have identical, nearly identical or effectively identical owners, that the defendants and Does 1 through 10 have the same offices, directors, and officers and that the defendants and Does 1 through 10 use one another as a mere shell or conduit for the affairs of one another. In addition, Plaintiff is informed and believes that each of the defendants and Does 1 through 10 disregard corporate formalities, shares employees and each transfers assets or properties away and/or creates or shifts liabilities so that each may be left with insufficient capital to meet the needs of each entity's business and its liabilities and without consideration to the detriment of the entity's creditors.

9. Plaintiff does not know the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, whether individual, corporate, associated, or otherwise, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named

defendants is responsible in some manner for the events and happenings, and caused the damages, alleged herein. Plaintiff will seek leave to amend this First Amended Complaint (the "Complaint) to allege the true names and capacities of such defendants, named herein as Does 1 through 10 when their names and capacities have been ascertained.

10. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants was the actual or ostensible duly authorized agent, managing agent, servant, employee, representative, alter ego, co-conspirator, incorporator, officer, director, shareholder, member, parent, brother or sister company or corporation, predecessor and successor-in-interest of each of the remaining co-defendants, and in doing the things hereinafter alleged, was acting within the course and scope of said agency, employment and office, with the express and/or implied permission, consent, resolution, direction, authorization and ratification of the remaining co-defendants, and each of them.

11. Each reference in this Complaint to "defendant," "defendants," "co-defendants," "defendant companies," "company defendants," "all persons acting under, in concert with, or for him/her/it", or to any specifically named defendant refers also to all defendants, including those sued or sued and served herein under fictitious names.

## **GENERAL ALLEGATIONS**

12. This case involves defendants' deliberate and calculated effort to steal Virun's proprietary dietary supplement formulations and produce unauthorized versions of Virun's dietary supplements through Virun's competitors. Since its founding in 2003, Virun has been engaged in the business of creating nutritious, great-tasting and novel formulations for the food, beverage, health and wellness, supplement, and pharmaceutical industries. Virun has developed over 50 product concentrates and over 100 commercialized products that allow difficult-to-dissolve, fortifiable ingredients into food and beverage applications that are associated with

efficacious health claims. Virun's products are marketed and sold throughout the United States, as well as internationally, including online and at Whole Foods, Sprouts Farmers Market, Kroger, GNC, and Erewhon grocery stores.

13. Defendant Cymbiotika was a valued buyer of Virun's dietary supplements. Plaintiff is informed and believes, and thereon alleges, that Jafarieh is the founder of Cymbiotika, and at all relevant times, has been a manager of Cymbiotika. Prior to the beginning of Virun's business relationship with Cymbiotika, Elmi became a manager and the CEO of Cymbiotika, and has served in those roles at all relevant times.

14. Cymbiotika purchased several dietary supplements, including, but not limited to, Vitamin B12 plus Fulvic Acid, Vitamin D3 plus K2, Vitamin C, Magnesium Threonate, Red Rice CLA, and Micelle Mushroom, pursuant to several purchase orders ("Purchase Orders").

15. During Cymbiotika's business relationship with Virun, Virun provided defendants with certain Virun trade secret information, including Virun's formulations and compositions (ingredient percentages) for Vitamin B12 plus Fulvic Acid, Vitamin D3 plus K2, Vitamin C, Magnesium Threonate, Red Rice CLA, and Micelle Mushroom (the "Confidential Information"). The Confidential Information is not publicly available and is maintained as confidential by Virun.

16. In connection with Virun's vendor relationship with Cymbiotika, Cymbiotika entered into a Confidentiality Agreement on January 8, 2019 (the "Confidentiality Agreement"), which specifically states:

> "a. A Receiving Party will limit access to Confidential Information to only those employees, students, agents, Affiliates and consultants of a Party who need to know such Confidential Information in furtherance of the Purpose, provided such individuals have been advised of the confidential nature of the Confidential Information and are under confidentiality and nonuse obligations that are at least as restrictive as those contained in this Agreement;
>
> b. A Receiving Party shall use reasonable efforts to protect Confidential Information from unauthorized use or disclosure, which efforts shall, at minimum, be equivalent to those efforts a Receiving

Party uses to protect its own confidential and proprietary information;

    c.    A Receiving Party shall use the Confidential Information only for the Purpose; and

    d.    A Receiving Party shall, without unreasonable delay, notify Disclosing Party of any unauthorized disclosure or use of Confidential Information, and will reasonably assist Disclosing Party (i) in repossessing any and all tangible copies of such Confidential Information and, additionally or alternatively, (ii) in limiting the extent of or preventing such disclosure or use, as the case may be."

The Confidentiality Agreement broadly defines the "Purpose" as any "possible future business or research relationship" including "but not limited to discussions of the Virun technology as applied to Cymbiotika products." A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit A, which is incorporated herein by this reference.

    17.    Plaintiff is informed and believes and on that basis alleges that Cymbiotika, Jafarieh, and Elmi induced Virun to disclose the Confidential Information in order to create unauthorized knockoff versions of Virun's formulations. On information and belief, Cymbiotika, Jafarieh, and Elmi shared Virun's Confidential Information with Virun's competitors, who used Virun's information to create unauthorized knockoff versions of Virun's formulations. Plaintiff is informed and believes and on that basis alleges that Cymbiotika has sold these unauthorized knockoff versions of Virun's formulations, profiting from defendants' misappropriation of Virun's Confidential Information. On information and belief, Jafarieh and Elmi knew of, prompted, directed, and approved of this misconduct.

    18.    Defendants are prohibited under the Confidentiality Agreement from disclosing or using the Confidential Information without Virun's consent, or from using the Confidential Information for their own benefit, personal gain, or the benefit of any competitor of Virun.

    19.    After producing and selling these unauthorized knockoff versions of

Virun's formulations, Cymbiotika stopped doing business with Virun, resulting in Virun's loss of sales. Plaintiff is informed and believes and on that basis alleges that Cymbiotika has begun selling its unauthorized knockoff versions of Virun's products to Virun's other customers, resulting in further loss of sales.

20. After Cymbiotika began producing unauthorized knockoff versions of Virun's formulations, Plaintiff is informed and believes, and thereon alleges that Cymbiotika, Jararieh, and Elmi made false and defamatory statements about Plaintiff's products to its customers and prospective customers in order to unfairly compete with Plaintiff. Plaintiff is informed and believes and thereon alleges that Jafarieh and Elmi, acting as representatives of Cymbiotika, falsely represented to its customers that Cymbiotika was still using Virun as its manufacturer when in reality, Cymbiotika had used Virun's Confidential Information to create inferior unauthorized knockoff versions of Virun's products. Plaintiff is also informed and believes and on that basis alleges that Jafarieh and Elmi, and Does 1-10, knew of and approved these representations, and that these representations were designed to gain an unfair and illegal advantage in the marketplace.

21. Despite a warning to cease these tortious actions, defendants have instead asserted to Virun that Virun's proprietary formulations are somehow Cymbiotika's intellectual property, and have unabashedly continued to produce and market the inferior unauthorized knockoff formulations. Defendants' tortious actions have caused and will continue to wantonly cause damage to Virun.

22. In an effort to avoid the expense of litigation and to halt defendants' wrongful conduct, Virun's counsel sent defendants a cease and desist letter on January 15, 2022. A copy of Virun's January 15, 2022 cease and desist letter to defendants is attached hereto as Exhibit B, which is incorporated herein by this reference.

23. Cymbiotika's counsel responded to the letter on January 31, 2022, disclaiming any wrongdoing, asserting for the first time that Virun's formulations belong to Cymbiotika, and confirming that Cymbiotika had shared Virun's

formulations with third parties to make new products. A true and correct copy of Cymbiotika's January 31, 2022 response letter to Virun is attached hereto as Exhibit C, which is incorporated herein by this reference.

24. Given Cymbiotika's letter, Plaintiff is informed and believes and on that basis alleges that defendants will continue to disclose Virun's Confidential Information to Virun's competitors in an effort to shamelessly produce inferior and unauthorized knockoffs of Virun's formulations.

25. As a result of defendants' actions, Virun has suffered damages exceeding $10 million. Further, if defendants are not enjoined from this tortious activity, they will continue to engage in this behavior, living parasitically off of the labor of Virun while causing further injury to Virun for which money damages will not suffice.

## FIRST CAUSE OF ACTION

**(Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (18 U.S.C. §1836, *et. seq.*) Against Defendants Cymbiotika LLC, Chervin Jafarieh Shahab Elmi, and Does 1 through 10)**

26. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

27. Plaintiff owned and possessed certain confidential, proprietary, and trade secret information, described above as the Confidential Information.

28. This Confidential Information relates to products used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

29. Plaintiff has taken reasonable measures to keep such information secret and confidential, including by, among other things, limiting access to confidential information, requiring business partners, including Cymbiotika, to sign confidentiality agreements, implementing employment policies that required confidentiality, and limiting computerized access.

30. This Confidential Information derives independent economic value from

years of development, not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

31. In violation of Plaintiff's rights, defendant Cymbiotika misappropriated, disclosed, and used the Confidential Information in the improper and unlawful manner as alleged herein. Cymbiotika used Plaintiff's Confidential Information for its own benefit, and for the benefit of its business partners. Cymbiotika's misappropriation, disclosure, and use of the Confidential Information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

32. Defendants Jafarieh, Elmi, and Does 1-10, and each of them, knew of the conduct being engaged in by Cymbiotika, actually knew or had reason to know that Cymbiotika's use and disclosure of Plaintiff's Confidential Information was improper, and facilitated or benefitted from the misappropriation and misuse. Defendants Jafarieh, Elmi, and Does 1-10 acted in concert with Cymbiotika, knowingly encouraging and participating in the wrongful conduct, and wrongfully disclosing the trade secret materials misappropriated by Cymbiotika.  Defendants Jafarieh, Elmi, and Does 1-10 took advantage of and profited from Cymbiotika's improper conduct as alleged herein.

33. As the direct and proximate result of defendants' conduct as alleged herein, Plaintiff has suffered and, if Plaintiff's conduct is not stopped, will continue to suffer, irreparable injury as well as significant damages, in an amount to be proven at trial.

34. Plaintiff has been damaged, and continues to be damaged, by all of the foregoing, and is entitled to injunctive relief and its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

## SECOND CAUSE OF ACTION

**(Breach of Written Contract Against Defendant Cymbiotika LLC)**

35. Plaintiff realleges and incorporates all preceding paragraphs herein by

reference.

36. Pursuant to the Confidentiality Agreement, Cymbiotika was obligated to keep confidential, both during and subsequent to the relationship with Plaintiff, all of Plaintiff's Confidential Information.

37. In breach of its contractual obligations, Cymbiotika used the Confidential Information to produce and sell unauthorized knockoff versions of Virun's formulations by disclosing Virun's Confidential Information to Virun's competitors.

38. As a direct and proximate result of Cymbiotika's breach, Plaintiff has suffered extensive damage, the exact amount to be determined at trial.

39. In addition, Plaintiff will continue to be directly and proximately damaged, and its goodwill irreparably harmed, if Cymbiotika is not enjoined from further violations, and if Cymbiotika is not directed to comply with the Confidentiality Agreement, and prohibited from using and disclosing Plaintiff's Confidential Information. Plaintiff has no adequate remedy at law as money damages alone will not fully compensate Plaintiff, and injunctive relief is warranted to prevent further irreparable harm to Plaintiff.

40. Plaintiff accordingly seeks damages and preliminary and permanent injunctive relief.

## THIRD CAUSE OF ACTION

**(Breach of Implied Covenant Of Good Faith and Fair Dealing Against Defendant Cymbiotika LLC)**

41. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

42. The Confidentiality Agreement, and the Purchase Orders, as in all contracts, contained implied covenants of good faith and fair dealing. By reason of the Confidentiality Agreement and the Purchase Orders, Cymbiotika covenanted to perform in good faith and to deal fairly with Plaintiff in all activities related to the

subject matter of the Confidentiality Agreement and the Purchase Orders. The covenants prohibited conduct by defendants that would prevent or impair or would tend to prevent or impair Plaintiff from enjoying the benefits of the terms of the Confidentiality Agreement and the Purchase Orders to which Plaintiff was entitled.

43. The actions of Cymbiotika, as alleged herein, have violated its covenants of good faith and fair dealing. Cymbiotika disclosed the Confidential Information to Virun's competitors in order to create unauthorized knockoff versions of Virun's products, and falsely represented to customers that Virun produced the inferior unauthorized knockoff products.

44. As a foreseeable, direct and proximate result of Cymbiotika's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in the amount of not less than $10 million, plus attorneys' fees, costs, expenses and interest, according to proof at trial.

## FOURTH CAUSE OF ACTION

**(Declaratory Relief Sought Against Defendants Cymbiotika LLC, Chervin Jafarieh, Shahab Elmi, and Does 1 through 10)**

45. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

46. Plaintiff is informed and believes, and on that basis alleges, that an actual controversy has arisen and now exists between Plaintiff, on one hand, and Defendants, on the other hand, concerning whether Plaintiff owns the formulations of the products that it supplied to defendants.

47. Plaintiff contends, as alleged above, that Plaintiff owns the formulations of the products that it supplied to defendants.

48. Plaintiff is informed and believes, and on that basis alleges that defendants dispute each of Plaintiff's contentions and assert otherwise.

49. Plaintiff therefore desires a judicial determination of its rights, obligations, and interests arising out of the allegations above, and specifically a

declaration that Plaintiff owns the formulations of the products that it supplied to defendants.

50. Such a judicial declaration is necessary and proper to avoid a multiplicity of suits. Moreover, the requested judicial declaration will clarify the rights and obligations of the parties and are, therefore, appropriate to resolve this controversy.

**APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

51. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

52. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to its damages, a temporary, preliminary, and permanent injunction, ordering defendants to cease, desist, and refrain from using Plaintiff's Confidential Information, and disclosing and/or sharing Plaintiff's Confidential Information with other parties.

53. Plaintiff is likely to succeed on the merits of this case because, among other reasons, defendants have admitted to disclosing Plaintiff's Confidential Information to other parties. *See* Exhibit C.

54. If defendants are not restrained from performing the illegal actions described herein, defendants' actions will result in immediate and irreparable harm to Plaintiff's business and its reputation within the marketplace, as well as its relationship with customers. Their actions will also result in irreparable harm to Plaintiff's ability to freely sell its products. Plaintiff has been and will continue to be injured by defendants' conduct.

55. The issuance of a temporary and permanent injunction preventing defendants from continuing to perform the illegal activity described herein is necessary to prevent immediate, substantial, and irreparable injury to Plaintiff. The issuance of these orders and injunctions also minimizes the risk of any further illegal interference with the relationships between Plaintiff and its customers. As such, a

balance of equities tips in Plaintiff's favor and an injunction is in the public interest.

56. Defendants should be temporarily enjoined during the pendency of this action and then permanently enjoined from continuing the wrongful conduct described herein.

57. Plaintiff is willing to post bond as required by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment jointly and severally against defendants Cymbiotika LLC, Chervin Jafarieh, Shahab Elmi, and Does 1 through 10, inclusive, as follows:

1. For compensatory damages, including general, actual, economic, consequential, and special damages, in an amount to be proven at trial;

2. For exemplary and punitive damages based on Defendants' knowing, willful, intentional and malicious conduct in an amount to be proven at trial;

3. For attorneys' fees pursuant to agreement or statute according to proof;

4. For costs of suit and expenses;

5. For temporary and permanent injunctive relief; and

6. For such other relief as may be just and proper.

DATED: August 31, 2022          Nevers, Palazzo, Packard,
                                Wildermuth & Wynner, PC


                                By: _____
                                    Sharlene D. Lee
                                    Alisa S. Edelson
                                    Attorneys for Plaintiff Virun, Inc.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff Virun, Inc. hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to the Seventh Amendment to the United States Constitution or as given by a statute of the United States.

DATED: August 31, 2022

Nevers, Palazzo, Packard,
Wildermuth & Wynner, PC

By: /s/ Sharlene D. Lee
Sharlene D. Lee
Alisa S. Edelson
Attorneys for Plaintiff Virun, Inc.

W:\Working\22804\08\W0495279.DOCX v2