SHARLENE D. LEE, ESQ., SB#274033
  *slee@npwlaw.com*
ALISA S. EDELSON, ESQ., SB#216269
  *aedelson@npwlaw.com*
NEVERS, PALAZZO, PACKARD,
WILDERMUTH & WYNNER, PC
31248 Oak Crest Drive, Suite 200
Westlake Village, California 91361
Telephone: (818) 879-9700
Facsimile: (818) 879-9680

Attorneys for Plaintiff Virun, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIRUN, INC., | CASE NO. 8:22-cv-00325-SSS(DFMx) |
| Plaintiff, | **PLAINTIFF VIRUN, INC.'S REPLY TO OPPOSITION TO MOTION TO DISMISS** |
| vs. | |
| CYMBIOTIKA LLC, a limited liability company; CHERVIN JAFARIEH, an individual; SHABAB ELMI, an individual; and DOES 1 through 10, inclusive, | Date:  November 18, 2022<br>Time:  2:00 p.m. |
| Defendants. | Discovery Cutoff:  None Set<br>Trial Date:        None Set |

1    **1.**     <u>**INTRODUCTION**</u>

Defendant Cymbiotika, LLC's ("Cymbiotika") Opposition ("Opposition") to the Motion to Dismiss (the "Motion to Dismiss") is based on a hypothetical version of the Amended Counterclaims ("Counterclaim") that does not exist. Its arguments do not match the actual Counterclaim filed. Cymbiotika has also failed to show that its claims for fraud in the inducement, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, trade libel, false advertising under the Lanham Act, tortious interference with contractual relations, tortious interference with prospective economic advantage, and unfair competition contain factual allegations sufficient to state a claim. Thus, the Court should grant the Motion to Dismiss as to all claims.

**2.**     <u>**CYMBIOTIKA FAILS TO STATE A CLAIM FOR FRAUD OR NEGLIGENT MISREPRESENTATION**</u>

The Counterclaim alleges the following misrepresentations:

-"that Cymbiotika, and not Virun, would own any and all formulations *that the Parties jointly developed* or were developed from Cymbiotika's ideas" [Counterclaim ¶50, p. 14:8-9 (emphasis added)]; and

-"Counterclaim Defendants *reiterated the representations* that Virun makes to all prospective customers as reflected on its website including that Virun does not produce private label products, but collabulary *(sic)* develops unique products with its customers and that those formulations made with a customer's ideas are the customer's intellectual property." [Counterclaim ¶50, p. 14:1-14 (emphasis added)].

While the Counterclaim references the following website language, this text does not match the Counterclaim's alleged misrepresentations:

-"[Q.] If Virun develops my product, who owns the formulation?

[A.]    When a client brings us an idea for development, the client owns that formulation. This is the most common scenario. However, in some instances companies have asked to private label a formula already owned by Virun, and in those cases, Virun retains ownership." [Counterclaim ¶19, p. 6:27-7:4]; and

- "[Q.] Does Virun sell private-label products?

[A.]    No. Every product we create is a custom formulation based on collaboration with our clients. Our products are developed on a project-by-project basis. Therefore, we do not sell private-label products."

1    [Counterclaim ¶20, p. 7:7-10].

2    Specifically, the alleged website language does not mention "joint

3    development" and does not contain the allege misrepresentation "that Cymbiotika,

4    and not Virun, would own any and all formulations that the Parties jointly developed

5    or were developed from Cymbiotika's ideas." [Counterclaim ¶50, p. 14:8-9].

6    Additionally, the Counterclaim alleges that the Counterclaim Defendants "*reiterated*

7    *the representations* that Virun makes to all prospective customers as reflected on its

8    website." [Counterclaim ¶50, p. 14:10-11 (emphasis added)].

9    Thus, the Counterclaim alleges misrepresentations based on, but not solely

10   constituting, the alleged website language.  As set forth in the Motion to Dismiss, the

11   alleged misrepresentations fail to satisfy the *Tarmann* requirements in that

12   Cymbiotika has not alleged the names of any persons from Virun who made the

13   allegedly fraudulent representations reiterating the website language, their authority

14   to speak, to whom they spoke, what they said or wrote, and when it was said.

15   The Opposition ignores the Counterclaim's allegations and focuses solely on

16   the website language. [Opposition p. 4:16-17]. As set forth above, the alleged website

17   language does not contain the allege misrepresentation "that Cymbiotika, and not

18   Virun, would own any and all formulations that the Parties jointly developed or were

19   developed from Cymbiotika's ideas" [Counterclaim ¶50, p. 14:8-9] or that Virun

20   "does not produce private label products but collabulary *(sic)* develops unique

21   products with its customers and that those formulations made with a customer's ideas

22   are the customer's intellectual property." [Counterclaim ¶50, p. 14:1-14].

23   Rather the Counterclaim's sole alleged misrepresentation that is contained in

24   the alleged website language is that Virun does not sell private label products.

25   However, the additional website language alleged makes clear that Cymbiotika could

26   not justifiably rely on such alleged representation, since the alleged website language

27   explicitly referenced Virun's private labeling of products: "However, in some

28   instances companies have asked to private label a formula already owned by Virun,

and in those cases, Virun retains ownership." [Counterclaim ¶19, p. 7:2-4]. Thus, the alleged website language cannot, on its own, form the basis for Cymbiotika's fraud and negligent misrepresentation claims.

As set forth in the Motion to Dismiss, because the Counterclaim alleges misrepresentations separate from the website language, these allegations must be made with the specificity required by <u>Tarmann v. State Farm Mut. Auto Ins. Co.</u>, 2 Cal.App.4th 153, 157 (1993).

With respect to the failure to properly allege damages relating to these claims, the Opposition confuses its damages allegations relating to other claims with damages *proximately caused* by the alleged misrepresentations. The Opposition concedes that Virun's assertion of the ownership of the formulations in this action are protected by the litigation privilege. Civ. Code §47. [Opposition p. 6, fn. 1]. Instead, the Opposition points to the Counterclaim's allegations that the relationship "resulted in Cymbiotika being dependent upon an ill-equipped supplier that subsequently improperly claimed ownership to Cymbiotika's formulas and published falsehoods." [Opposition p.6:14-16]. However, these alleged damages are not alleged to have been proximately caused by the alleged misrepresentations. The alleged misrepresentations regarding ownership did not allegedly cause Virun to be unable to fulfill orders, or to allegedly publish falsehoods.

For these reasons, the Court should dismiss the fraudulent inducement and negligent misrepresentation claims.

## 3. <u>CYMBIOTIKA FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT OR BREACH OF THE COVENANT OF GOOD FAITH</u>

As set forth in the Motion to Dismiss, the Counterclaim fails to properly allege the material terms of the alleged contracts. With respect to the first alleged oral contract regarding the ownership of the formulations, there are no allegations identifying its material terms. The Counterclaim alleges only that

"Cymbiotika and Virun entered into a contract whereby, after formulations developed to Cymbiotika's satisfaction were complete,

Cymbiotika would own the formulation and agreed to purchase product manufactured based on that formulation and packaged [sic] consisting with Cymbiotika's specifications from Virun." [Counterclaim ¶68, p. 16:20-24].

A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint. Albert's Organics, Inc. v. Holzman, 445 F.Supp.3d 463, 476 (citing Twaite v. Allstate Ins. Co., 216 Cal.App.3d 239, 252 (1989). In A.B. Concrete Coating Inc. v. Wells Fargo Bank, for example, the court dismissed the plaintiff's breach of contract claim because the "[p]laintiff [did] not allege when the contract was formed, nor the performance required of each party under the contract." 491 F.Supp. 3d 727, 736 (E.D. Cal. 2020).

Here, the Counterclaim fails to allege when the contract was formed, nor the performance required of each party. Instead, the Counterclaim's terms of the first alleged contract do not constitute a contract, but rather an illusory offer that does not, upon acceptance, result in an enforceable contract because the alleged terms do not obligate Cymbiotika to buy any goods. See California Refining Co. v. Producers Refining Corp., 25 Cal.App.2d 104, 106 (1938).

Similarly, the Counterclaim alleges that each purchase order and "similar ancillary documentation" for specific formulations constitute "its own separate subsidiary contract to this overall contract relationship. [Counterclaim ¶ 69]. As with the first alleged contract, the Counterclaim does not allege the material terms of these alleged separate written contracts, including when delivery was promised, and what lead times were agreed-upon.

Additionally, the Counterclaim fails to allege breach of these contracts. With respect to the first alleged contract relating to ownership, there are neither allegations as to when and how this contract (purportedly establishing Cymbiotika's ownership of formulations manufactured by Virun) was breached by failure to timely deliver product, nor allegations that Cymbiotika did not receive timely delivery. Similarly,

4

there are no allegations as to which alleged subsidiary written contracts promised delivery by a date certain, which alleged contracts were breached by failure to timely deliver, when these alleged breaches occurred, and what term or terms of the alleged subsidiary contracts were breached. Because the Counterclaim alleges written subsidiary contracts, they should be attached or the material terms alleged.

While the Opposition appears to concede the failure to allege breach of contract, it argues that Virun breached the covenant of good faith and fair dealing "by failing to timely fulfill purchase orders, refusing reasonable requests for order status information", "lying about supply issues" and by "mounting a baseless social media smear campaign". [Opposition p. 9:16-19]. However, the last two alleged breaches are not alleged in the Counterclaim with respect to these claims, the Counterclaim only refers to "inabilities to fulfill the Purchase Orders", refusals to respond to order fulfillment statuses, and Virun's assertion that it owns the formulations. [Counterclaim ¶78].

Inability to fulfill the purchase orders is not a breach of covenant of good faith and fair dealing of the first alleged contract, since as set forth above, the Counterclaim fails to allege binding contract terms. It is not a breach of the covenant of good faith and fair dealing of the second alleged contracts, since it would be duplicative of the breach of contract claim. Similarly, Virun's assertion that it owns the formulations cannot be the basis of a breach of good faith and fair dealing claim with respect to the first alleged contract because it would be duplicative.

"Virun's assertion that it now owns the formulations developed with Cymbiotika" [Counterclaim, ¶78] does not constitute unfair interference with Cymbiotika's right to receive the benefits of the contract because the alleged subsidiary agreements were for the purchase of product, not relating to ownership of the formulations.

As set forth above and in the Motion to Dismiss, Virun's assertion of ownership of the formulations in this action is protected by the litigation privilege, and cannot

form the basis of a damages allegation. Civ. Code §47. The Opposition cites <u>Wentland v. Wass</u> in support of its argument that the litigation privilege only applies to tort actions.  126 Cal.App. 4th 1484, 1495. However, the court in <u>Wentland</u> did not rule on the applicability of the litigation privilege to all breach of contract claims, but ruled only that where an individual's signs an agreement not to disparage another, that signee cannot then claim litigation privilege when being sued for his disparaging comments, even in the context of a litigation declaration.  <u>Id.</u> Its ruling is inapplicable.

Importantly, Cymbiotika has not, and cannot, assert damages caused by Virun's assertion of ownership of the formulations in this action because Cymbiotika has continued to sell products and cannot allege that it has changed its behavior. [<u>See</u> Counterclaim ¶40 ("Cymbiotika had to transition to a manufacturer who could meet its rising demand.")].

Finally, with respect to the alleged refusal to provide order fulfillment updates, Cymbiotika has failed to allege facts showing proximate damages. Instead, the Counterclaim contains only conclusory allegations that the alleged conduct "frustrated Cymbiotika's enjoyment of the benefits of the underlying Purchase Orders." [Counterclaim ¶78]. For these reasons, the Court should dismiss the breach of contract and breach of the covenant of good faith and fair dealing claims.

4.    **<u>CYMBIOTIKA FAILS TO STATE A CLAIM FOR TRADE LIBEL</u>**

As set forth in the Motion to Dismiss, the trade libel claim has not sufficiently pled special damages. The Opposition's reliance on a district court case, <u>Swiss America Trading Corp. v. Regal Assets</u>, 2015 WL 631569 (C.D. Cal. 2015) is misleading. In <u>Swiss America</u>, the court noted that the plaintiff alleged that as a result of the alleged misrepresentation on the defendant's sites, the plaintiff "*lost market share* to [the defendant] and suffered continuing irreparable harm to reputation and goodwill." <u>Id.</u> at *3 (emphasis added).

In contrast, the Counterclaim contains only a conclusory statement that Cymbiotika sustained "resultant loss of sales and goodwill from customers".

[Counterclaim ¶84]. Additionally, other district court have noted that "much more" than the factual allegations in <u>Swiss America</u> is required to plead trade libel. In <u>Quidel Corp. v. Siemens Medical Solutions USA, Inc.</u>, No. 16-cv-3059-BAS-AGS, 2020 WL 1820247, at *3 (S.D. Cal. Apr. 9, 2020), the court noted that another C.D. Cal. case held that to recover special damages for trade libel based on general business loss, Plaintiffs "should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication[.]" (quoting <u>Homeland Housewares, LLC v. Euro-Pro Operating LLC</u>, No. CV 14-3954 DDP (MANx), 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014). Thus, to state a trade libel claim, Cymbiotika must allege facts showing the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, and facts showing that such loss in sales were the natural and probable result of such publication. Because it has not done so, the court should dismiss the trade libel claim,

## 5.   <u>CYMBIOTIKA FAILS TO STATE A LANHAM ACT §43(A) CLAIM</u>

As set forth in the Motion to Dismiss (at p. 12:15-14:16), the false advertising under the Lanham Act (15 U.S.C. § 1125(A)(1)(B)) claim fails to state a plausible claim for relief. The Opposition fails to point to any facts in the Counterclaim or legal authority to the contrary.

First, the Opposition fails to demonstrate that the Counterclaim has sufficiently alleged facts showing that the purported false statements "actually deceived or have the tendency to deceive a substantial segment of its audience".  <u>See</u> <u>Skydive Ariz., Inc. v. Quaottrochi</u>, 673 F.3d 1105, 1110 (9th Cir. 2012). Rather, it simply argues that false, deceptive statements were made (pointing to paragraphs 41 through 47 and Exhibit B in the Counterclaim) without pointing to any factual allegations that "a substantial segment of its audience" was deceived. Moreover, its contention that this element has been satisfied is belied by Exhibit B, which shows only that the poster

tagged fifteen individuals in these posts, but not that the individuals had any identifiable interaction with the posts. Cymbiotika does not claim otherwise. Moreover, the court in Ariix, LLC v. NutriSearch Corp., 983 F.3d 1107, 1115 (9th Cir. 2021) stated that the dissemination must be "part of an organized campaign to penetrate the relevant market, which typically involves widespread dissemination". Id. at 1121 (internal quotations and citations omitted). A close examination of Counterclaim paragraphs 41 through 47 and Exhibit B reveals that no such language of deceit affecting a substantial segment of its audience was even alleged. The Counterclaim does not allege such widespread dissemination, and the Opposition does not argue that the claim can be amended to make such allegation.

Next, the Opposition improperly asserts that social media posts are advertisements under Ariix. This contention conveniently omits that the Ariix court acknowledged only that social media *paid posts made by social media influencers* "touting products or services" are considered advertisements. Id. at 1116. The district court ruling cited by the Opposition, Monster Energy Company v. Vital Pharmaceuticals, Inc., Case No. EDCV 18-1882 JBG (SHKx), 2022 WL 1599712, *4 (C.D. Cal. Apr. 19, 2022), is misleadingly cited. It appears to a ruling on a summary judgment motion, and the section misleadingly cited relates to a statement of undisputed material facts relating to a company's advertisement on product labels, social media posts, presentations, and other methods. The Opposition fails to cite to any case relating to comments made by individuals as a reaction to social media posts.

Additionally, the Opposition contends that Virun "plainly had an economic motivation behind the social media postings" pointing to paragraphs 41 through 47. [Opposition p. 13:14-17]. However, this is not the standard as set forth in Ariix, which requires that speaker acted out of "primarily economic motivation." Id. at 1117.

Finally, as set forth in the Motion to Dismiss, resulting injury has not been properly pled, as there is no allegation that counterclaim defendants' alleged conduct resulted in direct diversion of sales from Cymbiotika to them or lessened Cymbiotika's

goodwill associated with its products, as required by <u>Skydive Ariz.</u>, 673 F.3d at 1110. The Opposition does not address this contention, nor does it argue that the Counterclaim can be amended to make such factual allegations.

For these reasons, the Court should dismiss the claim for false advertising under the Lanham Act (15 U.S.C. § 1125(A)(1)(B)).

**6.** **CYMBIOTIKA FAILS TO STATE A CLAIM FOR INTERFERENCE WITH CONTRACTUAL RELATIONS OR WITH PROSPECTIVE ECONOMIC ADVANTAGE**

As set forth in the Motion to Dismiss, the Counterclaim fails to properly allege the economic relationships with which Virun purportedly interfered. The interference claims make bare references to "customers", "non-subscription-based customers", and "potential customers". [Counterclaim ¶98, 105].

As noted in the Court's Order Granting In Part and Denying In Part Defendants' Motion to Dismiss dated August 18, 2022 (Dkt. 78) ("8/18/22 Order"), in <u>TYR Sport Inc. v. Warnaco Swimwear, Inc.</u>, 679 F. Supp. 2d 1120, 1139 (C.D. Cal. 2009), "the court denied a motion to dismiss where a swimsuit manufacturer complainant had alleged an 'economic relationship with [swim] coaches, team dealers and athletes through which [it] was likely to benefit economically in the future' as the basis for its intentional interference claim." [8/18/22 Order, p. 15:10-14]. In the 8/18/22 Order, the Court noted that "the *TYR* allegations offered the court and opposing counsel enough information to identify the economic relationships with which defendants had purportedly interfered". In contrast to <u>TYR</u>, here, the Counterclaim fails to plead with any specificity the existence of relevant third parties.

Additionally, the  interference claims identify two categories of acts allegedly designed to induce a breach or disruption of the contractual relationship, "making false  statements publicly about the safety and efficacy of Cymbiotika's products" and "intentionally failing and refusing to deliver Cymbiotika products so that Cymbiotika could not fulfill its customer orders and subscriptions." [Counterclaim ¶100, 107].  As set forth in the Motion to Dismiss, the Counterclaim also fails to allege actual breach

or disruption of the contractual relationship or damage resulting from that breach.

The Opposition argues that "these tactics resulted in damages" but the Counterclaim contains only the conclusory allegation that "[a]s a direct and proximate result of Counterclaim Defendants' interference, Cymbiotika has suffered damages […]" [Counterclaim ¶102]. The Opposition contains a new allegation that "Virun intentionally lied about supply issues and bungled manufacturing knowing its conduct would result Cymbiotika suffering lost sales" but this allegation does not appear in the Counterclaim. [Opposition p. 14:19-21; compare Counterclaim ¶38-40 (alleging vaguely that Cymbiotika's business suffered "greatly" (¶38) despite stating that "Cymbiotika had to transition to a manufacturer who could meet its rising demand" (¶40); 42 (vaguely alleging "numerous customer complaints and lasting damage to Cymbiotika's business and reputation" ), 100-102 (conclusory damages allegation)].

Because Cymbiotika has failed to plead with any specificity the existence of relevant third parties, any actual breach or disruption of the contractual relationship, and resulting damage, the claims for tortious interference with contractual relations and interference with prospective economic advantage should be dismissed.

## 7. CYMBIOTIKA FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION

For the reasons set forth in the Motion to Dismiss and above, the Counterclaim fails to plead claims for fraud in the inducement, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, trade libel, false advertising under the Lanham Act, tortious interference with contractual relations, or tortious interference with prospective economic advantage. Because the unfair competition claim is dependent upon the same insufficient factual allegations, the unfair competition claim should be dismissed.

## 8. CONCLUSION

Virun respectfully requests this Court grant the Motion to Dismiss as to all claims.

DATED:  November 4, 2022

Nevers, Palazzo, Packard,
Wildermuth & Wynner, PC


By: _____/s/ Sharlene D. Lee_____
Sharlene D. Lee
Alisa S. Edelson
Attorneys for Plaintiff Virun, Inc.

W:\Working\22804\08\W0512780.DOCX

PLAINTIFF VIRUN, INC.'S REPLY TO OPPOSITION TO MOTION TO DISMISS