UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRUN, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYMBIOTIKA LLC, a limited liability company; CHERVIN JAFARIEH, an individual; SHAHAB ELMI, an individual; and DOES 1 through 10 inclusive. <br><br> Defendants. | Case No.  8:22-cv-00325-WLH-DFM <br><br> **ORDER REGARDING MOTION TO DISMISS SECOND AMENDED THIRD-PARTY COMPLAINT [171] AND MOTION TO DISMISS THIRD AMENDED COUNTERCLAIMS [172]** |
| CYMBIOTIKA LLC, a limited liability company, <br><br> Counterclaimant, <br><br> v. <br><br> VIRUN, INC., a California Corporation, and Does 1 to 10 inclusive. <br><br> Counter-defendants. | |

| | |
|---|---|
| | CYMBIOTIKA LLC, a limited liability company, |
| | Third-party Complainant, |
| | v. |
| | PHILIP BROMLEY, an individual, |
| | Third-party Defendant. |

Third-party Defendant Philip Bromley ("Bromley") filed a motion to dismiss the Second Amended Third-party Complaint (Docket No. 171). Counter-defendant Virun, Inc. ("Virun") also filed a motion to dismiss the Third Amended Counterclaims. (Docket No. 172). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Virun's and Bromley's motions.

## I. BACKGROUND

### A. Procedural History

The Court recites this procedural history from its prior order on Bromley's and Virun's most recent motions to dismiss. (*See* Order, Docket No. 160). Plaintiff Virun, Inc. ("Virun") sued Defendants Cymbiotika LLC ("Cymbiotika"), Chervin Jafarieh, Shahab Elmi, and Does 1-10 for misappropriation of trade secrets, breach of contract, and breach of the implied covenant of good faith and fair dealing. (Compl., Docket No. 1). Plaintiff moved for a Preliminary Injunction against misappropriation of trade secrets. (Docket No. 19).

While the Preliminary Injunction motion was pending, Cymbiotika filed a counterclaim against Virun and third-party defendant Bromley for fraudulent inducement, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, trade libel, false advertising, intentional

interference with contractual relations, intentional interference with prospective economic advantage, and unfair competition. (Counterclaims, Docket No. 99). Cymbiotika amended the counterclaims, breaking them up into a First Amended Counterclaim against Virun and a Third-Party Complaint against Bromley (Docket No. 104, 105).

Plaintiff and Counter-defendant Virun moved to dismiss the First Amended Counterclaim against Virun. (Docket No. 113). The Court denied the preliminary injunction. (Order re: Preliminary Injunction, Docket No. 127). Thereafter, the Court granted the motion to dismiss the First Amended Counterclaim against Virun. (Order, Docket No. 136).

Cymbiotika then filed a Second Amended Counterclaim against Plaintiff and Counterdefendant Virun. (Docket No. 140). Cymbiotika also filed a First Amended Third-party Complaint against Bromley. (Docket No. 141). Virun and Bromley moved dismiss the Second Amended Counterclaim and the Amended Third-party Complaint, respectively. (Virun Mot. to Dismiss, Docket No. 145); (Bromley Mot. to Dismiss, Docket No. 146). This Court granted both motions to dismiss with leave to amend but noted that it was unlikely to grant further leave to amend "absent exceptional circumstances" given Cymbiotika's multiple opportunities to amend both the Second Amended Counterclaim and the Amended Third-party Complaint. (Order, Docket No. 160).

Cymbiotika filed a Second Amended Third-party Complaint against Bromley, ("SATPC," Docket No. 163), and a Third Amended Counterclaim against Virun. ("TACC," Docket No. 164). Now, Bromley and Virun have each moved to dismiss the claims against them (Bromley Mot., Docket No. 171; Virun Mot., Docket No. 172).

### B. Factual Background

The Court recited the facts in full in its prior orders regarding other motions to dismiss in this case and declines to repeat itself ad nauseam here. (*See* Order, Docket No. 160; Order, Docket No. 136). In short, Virun, where Bromley worked, designs and manufactures dietary supplements. (Order, Docket No. 136 at 2). Cymbiotika is a supplement subscription service. (*Id.*). Virun and Cymbiotika worked together to develop a line of supplements before the business relationship soured. (*Id.*). The parties have disputed whether or not they had a formal manufacturing agreement in place regarding the supplement formulas. (*Id.*). Cymbiotika alleges that Virun intentionally and repeatedly refused to timely fulfill purchase orders, and that Bromley launched a series of social media attacks falsely claiming that Cymbiotika's new formulations were carcinogenic. (*Id.*).

## II. DISCUSSION

### A. Legal Standard

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

The court must construe the complaint in the light most favorable to the plaintiff and take its non-conclusory allegations as true. *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022). The court is not required, however, to accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions…").

Heightened pleading requirements apply to fraud or mistake claims. *See, e.g.*, *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1031–32 (9th Cir. 2016). For those causes of action, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires." "A district court's discretion to deny leave to amend is particularly broad where the [party] has previously amended," however. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

**B.    Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

Cymbiotika brings breach of contract and breach of the covenant of good faith and fair dealing claims against Virun alone. For the following reasons, the Court **DENIES** Virun's motion to dismiss the breach of contract claim. The Court also **DENIES** Virun's motion to dismiss the breach of the covenant of good faith and fair dealing claim.

In California, a breach of contract claim requires showing "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). One way to plead the existence of a contract is to "clearly allege the substance of the relevant terms." *Haddock v. Countrywide Bank, NA, et al.*, No. CV 14-6452 PSG (FFMx), 2015 WL 9257316, at *8 (C.D. Cal. 2015) (quoting *Bassam v. Bank of Amer.*, No. CV 15-00587 MMM (FFMx), 2015 WL 4127745, at *4 (C.D. Cal. July 8, 2015)).

5

The Court previously dismissed Cymbiotika's breach of contract claim because, as pled in the Second Amended Counterclaim, the breach of contract claim did not make clear which agreement Virun had allegedly breached—an overarching manufacturing and distribution agreement, individual purchase orders, or both. (Order, Docket No. 60 at 13). Because Cymbiotika failed to plead the underlying breach of contract claim, the Court also dismissed with leave to amend the attendant breach of the covenant of good faith and fair dealing claim. (*Id.* at 15).

Here, Virun makes a host of arguments why the breach of contract claim is not plausibly pled. First, Virun argues that Cymbiotika has not pled the existence of an overarching manufacturing contract because "[i]t does not attach any purported contract at issue or even any documents reflecting any such contract at all." (Virun Mot., Docket No. 172 at 16). Second, Virun also attempts to cast doubt on the validity of the breach of contract claim by arguing that it is not "plausible" that such a contractual relationship exists where Cymbiotika did not attach to the TACC any "invoices and purchase orders" (Virun Mot., Docket No. 172 at 18). Third, Virun argues that, even assuming a contract existed, Cymbiotika failed to adequately allege breach because the terms of the alleged contract are too vague. (Virun Mot., Docket No. 172 at 17−18 (pointing to allegations in the TACC that Virun breached the alleged contract by delivering products more slowly than the "average" or "typical" time that it allegedly promised, and the allegation that Virun breached its promise that Cymbiotika would "own any formula that Virun developed based on Cymbiotika's idea" without explaining what "Cymbiotika's idea" means) (citing TACC, ¶¶ 153, 159). Fourth, Virun argues that "Cymbiotika also attempts to mislead the Court and now argues that its 'breach of contract claim is predicated on an overarching business arrangement, which it defines as the Formula and Manufacturing Agreement, rather than any specific purchase order.'" (Virun Reply, Docket No. 181 at 8 (quoting Opp'n to Virun Mot., Docket No. 180 at 15)). Specifically, Virun contends that the breach of

contract claim as pled—and despite Cymbiotika's representations in opposition to the motion to dismiss the TACC—actually rests on breaches of both purchase orders and an overarching agreement, not one or the other. (*Id.*). Fifth, Virun argues that, even assuming the existence of a contract and a properly pled breach, Cymbiotika has failed to allege damages. (Virun Mot., Docket No. 172 at 18−19). Cymbiotika responds that it properly cured the counterclaim by clarifying that the alleged breach derives from the overarching manufacturing agreement rather than individual purchase orders, that the terms of the contract are not vague, and that it properly pled damages. (Opp'n to Virun Mot., Docket No. 180 at 16−17).

The Court **DENIES** the motion to dismiss the breach of contract claim. To address each of Virun's arguments in turn, failure to attach the alleged manufacturing agreement is not fatal; attaching the contract is not necessary as long as the claimant alleges the substance of the relevant terms. *See Haddock*, 2015 WL 9257316, at *9 (explaining that one way to plead the existence of a contract is to "clearly allege the substance of the relevant terms"). Second, whether or not it is "plausible" that a contract existed when Cymbiotika did not attach to the TACC purchase orders and invoices related thereto is not a proper inquiry at the motion to dismiss stage, where the Court takes Cymbiotika's allegations to be true, and so the Court disregards this argument at the present stage without prejudice to it being raised in a later motion. Third, regarding the alleged vagueness of the allegations, though the Court recognizes that the Third Amended Counterclaim is perhaps not the most artfully-crafted pleading, the alleged breaches are sufficient to give fair notice of the claims such that Virun can defend itself, which is all that is required at this stage. *See Haddock*, 2015 WL 9257316, at *9 (declining to dismiss a breach of contract claim, though it was "inartful[ly]" pled, because it was "still fairly obvious what breaches Plaintiff believes occurred" and the complaint gave the defendants "fair notice sufficient to defend themselves") (internal quotations omitted); (*see, e.g.,* TACC, Docket No. 163 ¶ 153

(providing that a term of the agreement was that Virun would manufacture the products within "2-3 weeks after receipt of all raw materials"); *id.* (explaining that another material term was that Virun would "issue invoices reflecting the price and quantity of the product to be manufactured from a given formula based on Cymbiotika would pay 50% of the invoice amount at the time of issuance…")). Fourth, counter to Virun's arguments, the TACC makes clear that the breach of contract counterclaim is predicated on an overarching manufacturing agreement. (*See, e.g.*, TACC, Docket No. 163 ¶ 156 ("Virun materially breached the Formulation and Manufacturing Agreement…")). That certain terms (including price and quantity) were supplied by purchase orders or invoices is not inconsistent with the existence of an overarching agreement. Fifth, the sole case that Virun cites for the proposition that Cymbiotika did not sufficiently plead damages is inapposite as it arises outside the breach of contract context.

Finally, the Court **DENIES** Virun's motion to dismiss the implied breach of the covenant of good faith and fair dealing claim, which Virun attacked on the basis that the underlying contractual claim was improperly pled. Since the Court has found that the breach of contract claim was properly pled, Virun's argument is moot as to the attendant breach of the covenant of good faith and fair dealing claim.

### C. Fraud and Negligent Misrepresentation

Cymbiotika claims that Virun engaged in fraud and negligent misrepresentation. For the reasons set forth below, the Court **GRANTS** Virun's motion to dismiss these claims. To plead fraud, a party must plead facts showing a misrepresentation, knowledge of falsity or reckless disregard for the truth, intent to induce reliance, justifiable reliance, and resulting damage. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 240 (2007). When alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

8

Negligent misrepresentation causes of action essentially contain the same elements as a fraud claim, except the person alleged of making the false representation need not have "knowledge of falsity or reckless disregard for the truth," but rather must lack "reasonable ground for believing it to be true." Cal. Civ. Code § 1710(2). Predictions about future events are typically deemed nonactionable opinions and are not cognizable under a negligent misrepresentation theory. *See, e.g.*, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991) (holding that a false promise is incompatible with the negligent misrepresentation doctrine).

The Court previously dismissed the fraud and negligent misrepresentation claims with leave to amend. (Order, Docket No. 160 at 9−11). The Court reasoned that, with respect to the fraud claim, the Second Amended Counterclaim did not plead with particularity that Virun officials had the intent at the time of the promise not to permit Cymbiotika to own the formulas. (*Id.* at 9). With respect to the negligent misrepresentation claim, the Court reasoned that the Second Amended Counterclaim only pled a misrepresentation of a future fact, which is not actionable under a negligent misrepresentation theory. (*Id.* at 10).

Here, Cymbiotika has failed to cure the deficiencies the Court previously identified, so Virun's motion to dismiss the fraud and negligent misrepresentation claims are **GRANTED**. With respect to the fraud claim, Cymbiotika appears to have attempted to cure the claim by adding allegations that Cymbiotika "is informed and believes" that Virun "always intended to claim ownership over any formula…but kept these intentions hidden." (*See, e.g.*, TACC ¶ 113). Allegations resting on "information and belief," however, are generally insufficient to meet the heightened pleading standard for fraud claims, *see e.g.*, *Tortilla Factory, LLC v. Health-Ade LLC*, No. CV179090MWFAFM, 2018 WL 6174708, at *8 (C.D. Cal. July 13, 2018) ("[A]llegations of fraud upon information and belief typically do not satisfy Rule 9(b)'s heightened pleading requirements."). It is true, as Cymbiotika's counsel

pointed out at the hearing, that the general rule that information and belief allegations are improper under Rule 9 "'may be relaxed with respect to matters within the opposing party's knowledge' because 'in such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts.'" *Ramirez v. Bank of Am.*, 634 F. Supp. 3d 733, 740 (N.D. Cal. 2022) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). "But while facts may be alleged upon information and belief" with respect to matters not within the claimant's knowledge, "that does not mean that conclusory allegations are permitted. A conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*." *Masimo Corp. v. Apple, Inc.*, No. SACV 20-48 JVS JDEx, 2021 WL 925885, at *8 (C.D. Cal. Jan. 6, 2021). The other allegations that Cymbiotika added to the Third Amended Counterclaim are akin to the conclusory statements that the Court already found were insufficient to establish a fraudulent intent *at the time of the promise*. (*See, e.g.*, TACC ¶ 120 ("Virun and Bromley…knew that these ownership statements…were false when first published online…")). As the Court previously held, such conclusory allegations do "not even survive 8(b)'s pleading requirements, [] let alone 9(b)'s heightened pleading standard." (Order, Docket No. 160 at 9−10 (internal citation omitted)). Because Cymbiotika has had multiple chances to properly plead its fraud claim, the Court **DISMISSES** the fraud claim without leave to amend.

The Court also **DISMISSES** the negligent misrepresentation claim for the same reason it previously dismissed the claim—it still fails to allege actionable misrepresentation. The Court gave Cymbiotika leave to amend the negligent misrepresentation claim to claim that Virun made knowingly false statements as to existing facts rather than future ones. (Order, Docket No. 160 at 11). Cymbiotika appears to have attempted to remedy its negligent misrepresentation claim by adding an allegation that the false statements concerned not future facts but rather existing facts—it now alleges that Virun and Bromley falsely represented, among other things,

that "Virun's customers owned the formulas based on their ideas," and that Virun's clients' "ownership of its own formulas was or is 'the most common scenario' in Virun's business." (TACC ¶ 136). As Virun points out in its motion to dismiss, however, rephrasing the alleged misrepresentations in the present tense does not change the fact that the material misrepresentation for which Cymbiotika seeks relief is a misrepresentation as to the future ownership of the formulas Cymbiotika allegedly helped develop, not misrepresentations as to other clients' formulas. (Virun, Mot., Docket No. 172 at 13). Because this claim has also been pled multiple times, the Court **DISMISSES** it without leave to amend.

### D. Lanham Act False Advertising

The Court **DENIES** the motion to dismiss Cymbiotika's Lanham Act false advertising claims against both Virun and Bromley. To prevail on a claim for false advertisement under the Lanham Act, a plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision, (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1071 (9th Cir. 2014).

The Court previously held that Cymbiotika failed to state a claim for injury resulting from the alleged deception. (Order, Docket No. 160 at 16−17 (reasoning that an alleged dip in sales, without reference to the timing thereof, was insufficient to show injury)). Here, Cymbiotika's additional allegations cure the previously noted deficiency. In the Second Amended Third-party Complaint, Cymbiotika alleges that

"Cymbiotika saw a meaningful decline in Vitamin C subscriptions concomitant" with Bromley's social media post claiming that Cymbiotika's supplements were carcinogenic. (SATPC, Docket No. 164 ¶ 119). Cymbiotika also added an allegation that "Cymbiotika saw a meaningful increase in cancellation of customer subscriptions for Vitamin C concomitant with" the social media posts at issue. (*Id.* ¶ 127). These claims are sufficient to satisfy the notice pleading standard for a false advertising claim. As a result, the Court **DENIES** Virun's and Bromley's motions to dismiss the Lanham Act false advertising claims, i.e. the Fifth Counterclaim (TACC, Docket No. 163) and the First Third-party Claim. (SATPC, Docket No. 164).

At the hearing, counsel for Virun and Bromley advanced the argument that, even if the Court finds as it has here that the injury element is sufficiently pled, Cymbiotika has still failed to plead the second and third elements of the false advertising claim—that the statement "actually deceived or has the tendency to deceive a substantial segment of its audience" and that "the deception is material, in that it is likely to influence purchasing decisions." *Wells Fargo*, 758 F.3d at 1071. The Court disagrees and finds that Cymbiotika's allegations are sufficient at the pleading stage. (*See, e.g.*, SATPC ¶ 127 "[A]dvertising that a competitor's Vitamin C supplement contains one or more cancer causing ingredients will obviously cause subscribers of that product to cancel their subscription since it is obvious that no rational person wants to expose themselves to cancer causing substances. Additionally, Cymbiotika saw a meaningful increase in cancellation of customer subscriptions for Vitamin C concomitant with Bromley's advertising activity."); TACC ¶ 198 (same)).

### E. Tortious Interference with Contract

Cymbiotika also brings tortious interference with contractual relations claims against both Virun and Bromley.[1] The Court **GRANTS** Virun's and Bromley's respective motions to dismiss these claims.

The elements of tortious interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998). The Court previously held that Cymbiotika's tortious interference with contract claims against Virun and Bromley could not survive a motion to dismiss. (Order, Docket No. 160 at 18−19). Specifically, this Court found—as did Judge Sykes in a prior order, (Docket No. 136 at 6−7)—that Cymbiotika failed to put forth non-conclusory allegations that Virun and Bromley engaged in intentional acts designed to induce breach of a contractual relationship. (Order, Docket No. 160 at 19).

Here, Cymbiotika has *still* failed to add any facts to either the Second Amended Third-party Complaint or the Third Amended Counterclaim that Virun and Bromley intended to disrupt contractual relations. Because Cymbiotika has had multiple

---

[1] Cymbiotika dropped its tortious interference with prospective economic advantage claim against Virun. (*Compare* Second Amended Counterclaim, Docket No. 140, *with* Third Amended Counterclaim, Docket No. 163). Though Cymbiotika initially did not drop its tortious interference with prospective economic claim against Bromley, (*see* SATPC, Docket No. 164 at 36−37), it indicated in opposition to Bromley's Motion to Dismiss that it would withdraw that claim against Bromley as well. (Opp'n, Docket No. 179 at 12 ("Cymbiotika withdraws its claim[] for Tortious Interference with Prospective Economic Advantage" against Bromley)). As a result, the Court **DISMISSES** without leave to amend the Third Claim for Tortious Interference with Prospective Relations against Bromley. (SATPC, Docket No. 164 at 36−37).

13

attempts to cure this deficiency and has failed to do so, the Court **GRANTS** the motions to dismiss the tortious interference with contractual relations claims against both Virun and Bromley (i.e. the Sixth Counterclaim in the Third Amended Counterclaims and the Second Claim in the Second Amended Third-party Complaint), without leave to amend. *See, e.g.*, *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended.").

### F. Unfair Competition

Cymbiotika dropped its unfair competition law claim ("UCL") against Virun. (*Compare* Second Amended Counterclaim, Docket No. 140, *with* Third Amended Counterclaim, Docket No. 163). Cymbiotika also indicated in its opposition to Bromley's Motion to Dismiss that Cymbiotika would also withdraw its UCL claim against Bromley. (Opp'n, Docket No. 179 at 12 ("Cymbiotika withdraws its…UCL claim" against Bromley)). In light of Cymbiotika's withdrawal of the sole remaining UCL claim, the Court **DISMISSES** without leave to amend Cymbiotika's Fourth Claim for Unfair Competition. (SATPC, Docket No. 37).

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Virun's motion to dismiss the breach of contract counterclaim. The Court **DENIES** Virun's motion to dismiss the breach of the implied covenant of good faith and fair dealing counterclaim. The Court **GRANTS** Virun's motion to dismiss the fraud and negligent misrepresentation counterclaims without leave to amend. The Court **DENIES** Virun's and Bromley's motions to dismiss the false advertising claims. The Court **GRANTS** Virun's and Bromley's motions to dismiss the tortious interference with contract claims without leave to amend. The Court also **GRANTS** Bromley's motion to dismiss the tortious

///

///

interference with prospective economic advantage without leave to amend. Finally, the Court **GRANTS** Bromley's motion to dismiss the unfair competition law claim.

**IT IS SO ORDERED.**

Dated: November 6, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE