SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
kraygor@sheppardmullin.com
KAZIM A. NAQVI, Cal. Bar No. 300438
knaqvi@sheppardmullin.com
1901 Avenue of the Stars, 16th Floor
Los Angeles, California  90067
Telephone:  (310) 228-3700
Facsimile:   (310) 228-3701

SHEPPARD MULLIN RICHTER & HAMPTON LLP
DARREN M. FRANKLIN, Cal. Bar No. 210939
dfranklin@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:  (213) 620-1780
Facsimile:   (213) 620-1398

Attorneys for Plaintiff and
Counterdefendant VIRUN, INC. and
Third-Party Defendant PHILIP
BROMLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRUN, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CYMBIOTIKA LLC, a limited liability company; CHERVIN JAFARIEH, an individual; SHAHAB ELMI, an individual; and DOES 1 through 10, inclusive,<br><br>        Defendants.<br><br>CYMBIOTIKA LLC,  a limited liability company,<br><br>        Counterclaimant,<br><br>    v.<br><br>VIRUN, INC., a Delaware corporation, and Roes 1 to 10 inclusive.<br><br>        Counterclaim Defendants. | Case No. 8:22-cv-00325-WLH (DFMx)<br><br>*Hon. Wesley L. Hsu*<br>Courtroom: 9B<br><br>**DECLARATION OF KAZIM A. NAQVI IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANT VIRUN INC,'S OPPOSITION TO DEFENDANT AND COUNTERCLAIMANT CYMBIOTIKA LLC'S MOTION FOR RECONSIDERATION**<br><br>Hearing Date:     January 12, 2024<br>Time:                 1:00 p.m.<br>Place:               Courtroom 9B<br><br>[*Filed concurrently with Opposition to Motion*]<br><br>Trial Date:          July 9, 2024 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CYMBIOTIKA LLC, a limited liability company,

        Third-Party Complainant,

    v.

PHILIP BROMLEY, an individual,

        Third-Party Defendant.

DECLARATION OF KAZIM A. NAQVI

I, Kazim A. Naqvi, declare as follows:

1.     I am an associate at Sheppard, Mullin, Richter &  Hampton LLP, counsel of record herein for Virun, Inc. ("Virun").  This declaration is submitted in support of Virun's Opposition to Cymbiotika's Motion for Reconsideration (the "Opposition").  If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief as follows.

2.     A true and correct copy of the Reporter's Transcript of Proceedings from the October 20, 2023 hearing regarding Virun's Motion to Dismiss Cymbiotika's *Third Amended Counterclaims*, is attached hereto as Exhibit "A."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of December, 2023, at Los Angeles, California.

*/s/ Kazim A. Naqvi*

Kazim A. Naqvi

DECLARATION OF KAZIM A. NAQVI

# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3        HONORABLE JUDGE WESLEY L. HSU, U.S. DISTRICT JUDGE

 4

 5   VIRUN, INC.,                          )
                                           )
 6                 Plaintiff,              ) CASE NO.
                                           ) 22-CV-00325-WLH
 7        vs.                              )
                                           )
 8   CYMBIOTIKA LLC, a limited liability   )
     company; CHERVIN JAFARIEH,            )
 9   an individual; SHAHAB ELMI,           )
     an individual; and DOES 1 through     )
10   10, inclusive,                        )
                                           )
11                 Defendants.             )
     _____)
12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                FRIDAY, OCTOBER 20, 2023

17                     11:22 A.M.

18              LOS ANGELES, CALIFORNIA

19

20

21

22   _____

23            MAREA WOOLRICH, CSR 12698, CCRR
              FEDERAL OFFICIAL COURT REPORTER
24            350 WEST FIRST STREET, SUITE 4311
              LOS ANGELES, CALIFORNIA 90012
25                 mareawoolrich@aol.com
```

1               **APPEARANCES OF COUNSEL:**

2

3    **FOR PLAINTIFF AND COUNTERDEFENDANT VIRUN, INC.**
     **AND THIRD-PARTY DEFENDANT PHILIP BROMLEY:**

4

5        SHEPPARD MULLIN RICHTER & HAMPTON LLP
         BY:  KAZIM A. NAQVI
         1901 Avenue of the Stars, 16th Floor

6        Los Angeles, CA 90067

7

8    **FOR DEFENDANTS AND CROSS-DEFENDANTS:**

9        FOX ROTHSCHILD LLP
         BY:  JOHN SHAEFFER
         10250 Constellation Boulevard, Suite 900

10       Los Angeles, CA 90067

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; FRIDAY, OCTOBER 20, 2023

2                          11:22 A.M.

3                           -oOo-

4

5          THE COURTROOM DEPUTY:  Calling Item No. 4,

6    SA 22-CV 325, Virun Inc. versus Cymbiotika LLC, et al.

7          Counsel, please state appearances starting with

8    plaintiff.

9          MR. NAQVI:  Good morning, Your Honor.  Kazim Naqvi

10   from Sheppard Mullin on behalf of Virun and the third-party

11   cross-defendants.

12         MR. SHAEFFER:  Good morning, Your Honor.

13   John Shaeffer on behalf of the defendants and cross-defendants.

14   Oh, and the party's name is Cymbiotika.  I know it's hard.

15         THE COURT:  Yes.

16         THE COURTROOM DEPUTY:  Sorry.

17         THE COURT:  I recall that from last time.

18         All right.  We are here on two motions to dismiss,

19   the -- first the Complaint and the Second Amended Complaint

20   and -- Third-Party Complainant's, excuse me, Second Amended

21   Complaint and then the counterclaims from Cymbiotika's

22   Third Amended Counterclaims.

23         We have issued a tentative which I assume both

24   counsel have had time to review.

25         So which moving party should I hear from first?

1          MR. NAQVI:  Your Honor, if I may.

2          THE COURT:  Sure.

3          MR. NAQVI:  Thank you.

4          So, Your Honor, we very much appreciate the detailed

5    tentative.  I know it came late last night.  And it's very

6    detailed.  It's very thorough.  And I think it's, for the most

7    part, very well reasoned.

8          I don't think it's going to surprise the Court I

9    would like to just address the two buckets of claims that the

10   Court intends to deny the motion on.  And there's just a few

11   things that I'd like to point out and perhaps have the Court

12   reconsider.

13         So first the breach of contract claim and, you know,

14   the dependent implied covenant claim.

15         So I understand from the Court's tentative ruling

16   that it has found that Cymbiotika has sufficiently alleged the

17   existence of a purported oral formula and manufacturing

18   agreement.  And on page 6 of the tentative, the Court

19   acknowledges that the Third Amended Counterclaims may not be

20   the most artfully crafted pleading but that it still gives

21   Virun fair notice of the breach of contract claim.

22         I just want to address the sufficiency of those

23   allegations and the identification of the alleged oral

24   agreement.  So, for example, one of the alleged terms of the

25   oral agreement is that "Cymbiotika would own any formula that

1    Virun developed based on Cymbiotika's ideas."  And that's

2    quoted from paragraph 153 of the Third Amended Counterclaims.

3          But what does Cymbiotika's idea mean?  Is that a

4    complete formulation?  Is that a single ingredient?  Is that

5    changing a quantity of an existing ingredient?  You know, we

6    are having a hard time defending against this allegation

7    because there are no allegations regarding what Cymbiotika's

8    idea means.  "Idea" is a very broad and vague term, and we just

9    don't think that's specifically alleged.

10          Another term of the alleged oral agreement is that

11    the "typical" or "average" lead time on production was two to

12    three weeks after receipt of all raw materials.  I'm having a

13    hard time understanding how there can be a breach when the

14    alleged provision of the contract uses vague and pretty much

15    open-ended terms like "typical" or "average."

16          There aren't allegations that Virun guaranteed

17    products would be delivered within two to three weeks or Virun

18    guaranteed a specific delivery date.  Those aren't the

19    allegations.  And so on whether the terms of the alleged oral

20    agreement have been sufficiently alleged, I would just point

21    the Court to those two examples as reasons why we believe --

22    you know, it is an oral agreement.  I understand the Court has

23    ruled, and I agree that you don't have to attach it.  You don't

24    have to spell everything out, you know, A to Z.

25          But we need to understand what is it that we've

1    alleged to have been breached.  And, you know, these two

2    examples I provide I think provide some color why we are having

3    a hard time with that.

4            Setting that aside, because I understand the Court,

5    you know, is likely to stick with its tentative and determine

6    that the oral agreement has been sufficiently alleged, that

7    leaves the issue of these purchase orders and invoices that are

8    referenced throughout the pleading.

9            I think there may have been some confusion, and I

10   just want to point out hopefully a helpful point of clarity.

11   So on page 5 of the tentative, the Court stated that Virun

12   argued a contradictory pleading type of argument because

13   quote -- or because in a "prior iteration of the counterclaims,

14   Cymbiotika alleged that the contractual agreement flowed from a

15   combination of an alleged overarching manufacturing agreement

16   and purchase orders and Cymbiotika -- and now Cymbiotika

17   alleges that the contractual relationship that was allegedly

18   breached relates only to the overarching business arrangement."

19           Respectfully, Your Honor, I don't think that's true.

20   It's not the matter of the prior counterclaims contradict the

21   current ones.  The contradiction exists in the current

22   pleading.  And let me explain how.

23           For example, paragraph 34 of the current

24   counterclaims, the Third Amended Counterclaims, expressly

25   alleges, "The contract terms relating to both price and

1   quantity of all goods Virun manufactured for Cymbiotika under

2   the parties' formula and manufacturing agreement are separately

3   and specifically identified in the purchase orders and invoices

4   by and between Cymbiotika and Virun for each batch of a

5   specific supplement that Virun would manufacture."  So that

6   specifically says that the price and quantity terms are set

7   forth in the purchase orders and invoices.

8           I would also direct the Court to paragraphs 34 to

9   36, 74 to 76, and 80.  And they continue to describe terms of

10  these alleged invoices and purchase orders and that Virun did

11  not timely deliver product under those invoices.

12          In paragraphs 51 to 62, they expressly allege terms

13  of these alleged purchase orders and invoices for specific

14  products and Virun's alleged breaches thereof.  Same thing in

15  paragraphs 153 to 164.

16          So I provide these examples to kind of just explain

17  that there's no dispute that the current pleading advances a

18  breach of contract claim based on alleged purchase orders and

19  invoices, which the Court had noted is not attached to the

20  pleading.  They are not really explained in any bit of detail.

21          And so when this argument was made in the motion

22  that we still don't know, is it a breach of this oral

23  agreement?  Is it a breach of the purchase orders and invoices?

24  Both?  One of them?  We don't know.  Cymbiotika backtracked,

25  and on page 15 of its opposition breach, it said that its

breach of contract claim is "predicated on overarching business agreement," which it defined as the formula and manufacturing agreement, "rather than any specific purchase order."

So my belief is that that statement in the opposition is not consistent with what is alleged.  What is alleged is this alleged oral agreement -- a breach of this alleged oral agreement, a breach of the purchase orders, a breach of the invoices, but it's still not clear.

And so the ultimate point I want to make, Your Honor, is if Your Honor decides that the alleged oral agreement has been sufficiently alleged, which I think is where the Court is going, the reason why I'm bringing this up is because it's very important for discovery purposes.  I really would like a stipulation or some sort of order that makes very clear that Cymbiotika's breach of contract claim is limited to the alleged oral formula and manufacturing agreement and that it does not include these alleged purchase orders and invoices.

The reason why that's important is we are very deep into discovery now.  They've taken many depositions.  We are about to take depositions.  We've had written discovery going back and forth.  And Cymbiotika has advanced a lot of discovery about these purchase orders and invoices, the delivery dates, so on and so forth.

And so I just want to make that very clear that, if Cymbiotika is going to distill its contract claim to this

1  alleged oral agreement, it needs to be limited to that.

2        THE COURT:  Well, I guess I just disagree with you

3  on the fundamental formulation of both of these arguments.

4        First, I don't think that the terms are sufficiently

5  unclear in a complaint -- at a complaint stage for your client

6  to be able to defend itself.  I think "average" or "typical,"

7  you know, terms like "reasonable" and things that are sort of

8  broader concepts are used in contract terminology all the time.

9  And it's the practice of the parties which can be discovered

10  through the process that can establish the specifics of the

11  contract terms.

12        So in terms of pleading stage and a motion to

13  dismiss, I don't think either of the terms that you have

14  referred to move me at all that they are sufficiently imprecise

15  to defeat -- well, for me to rule on a motion to dismiss.

16        And then with respect to the purchase orders and

17  invoices, the existence of the purchase orders and invoices in

18  themselves does not negate the existence of an alleged oral

19  overarching agreement.  You can have an alleged oral

20  overarching agreement with a distributor that is then

21  manifested in individual invoices and purchase orders.

22        So I don't think that such a limitation would be

23  appropriate, at least in the case as I understand it sitting

24  here today which admittedly is early -- is at a very early

25  stage.

1          MR. NAQVI:  Understood, Your Honor.  And I think --

2    I appreciate where the Court is coming from.

3          Let me -- my last claim that I'd like to address is

4    the false advertising claim, and this will be hopefully

5    shorter.

6          The Court found that Cymbiotika has now sufficiently

7    pled injury.  It cited to the allegation that "Cymbiotika saw a

8    meaningful increase in cancellation of customer subscriptions

9    for vitamin C concomitant with Bromley's advertising activity."

10   That's the Third Amended Counterclaim, paragraph 198.  I'd like

11   to take a step back before we even get to injury.

12         The false advertising claim is five elements.

13   Cymbiotika has still not alleged facts for two of the elements.

14   And we made this argument in the prior motion to dismiss and

15   now, and they still haven't fixed the issue.  The two elements

16   that have no facts pled in support of are that the statement

17   actually deceived or has tendency to deceive a substantial

18   segment of its audience -- a substantial segment of its

19   audience -- or that the deception is material in that it is

20   likely to influence the purchasing decisions.  These are

21   elements from -- of a false advertising claim.

22         And all Cymbiotika does, it just recites those

23   elements as a legal conclusion.  There are no facts describing

24   any segment, let alone a substantial segment, of how its

25   audience was deceived or how the deception would have

1  influenced purchasing decisions.  And without any facts in

2  support of these two elements, I'm having a hard time seeing

3  how this claim was sufficiently alleged.

4        And it actually relates to the injury piece which

5  I'll now turn to.  So in its prior order where the Court

6  dismissed this claim with leave to amend, the Court held

7  that a general allegation that "Cymbiotika experienced a dip in

8  sales after the social media post is akin to evidence that the

9  9th Circuit has found does not establish injury as a matter of

10  law."

11        So now the new allegation is Cymbiotika saw

12  meaningful increase in cancellation of customer subscriptions

13  for vitamin C concomitant with Bromley's advertising activity.

14  I'm having a hard time finding a material distinction between

15  what the Court found insufficient with what the Court now finds

16  sufficient.

17        The allegation is there was an increase in

18  cancellations after the posts were made.  And let me explain

19  why I still believe that's deficient.  It still fails to allege

20  that these cancellations were specifically caused by or a

21  result of the social media post.  And that is why the failure

22  to allege the two elements I talked about before, the deception

23  of a substantial segment or influence of purchasing decisions,

24  matters.  Because without those allegations, the link between

25  the social media posts and the increase in cancellations I

1   think is missing.

2         And so, you know, I would just ask the Court

3   respectfully if it could reconsider and look to see if those

4   two elements regarding deception of a substantial segment or,

5   you know, deception causing influence on purchasing decisions

6   have been alleged because from my reading of the pleading, they

7   still have not.

8         THE COURT:  Okay.  I'm happy to go back and look at

9   those two elements.

10         With respect to the difference now, I think that for

11   me, at least, cancellations is much more specific given in the

12   context in which the Bromley allegations are made.

13         To me, a dip in sales is a generic -- you know,

14   anything could have happened to cause a dip in sales.  It could

15   be market conditions.  It could have been the pandemic.  It

16   could have been anything.

17         Whereas cancellations, you know, close in time after

18   the posts that we are talking about here, I think that is a

19   reasonable inference that I could draw from the way the

20   Complaint is worded for it to survive at least at this stage.

21   You know, we'll deal with it once all the facts are in front of

22   me.  But for this stage, I think that's enough.

23         But I will go back and look at those two elements

24   that you've raised here today.

25         MR. NAQVI:  Thank you, Your Honor.  That's all I

```
 1   want to address, but I'll obviously reserve argument for
 2   whatever counsel does.
 3              THE COURT:  Okay.  Thank you.
 4              MR. NAQVI:  Thank you, Your Honor.
 5              MR. SHAEFFER:  Thank you, Your Honor.
 6              I'll just address that last point, and I agree with
 7   Your Honor.  I'd refer the Court to Southland Sod which they
 8   were able to show a linkage between when the false advertising
 9   was run and when the sales changed.  That's what we are showing
10   here.  We can directly link cancellations to when misstatements
11   were made.
12              And as to the impact of these statements, these are
13   health supplements that it's being posted on the Internet
14   cause -- have ingredients that cause cancer.  I'm not going to
15   take a health supplement that has ingredients that cause
16   cancer.  So I think that that's sufficient.  And, again, we are
17   under a plausibility standard, not the heightened standard of
18   proof.
19              I would like to refer the Court, going to my
20   substantive arguments, to page 8 of the Court's opinion.  The
21   pages weren't numbered, but it's the page 8.  It's on the fraud
22   and negligent misrepresentation portion.
23              The Court writes, "With respect to the fraud claim,
24   Cymbiotika appears to have attempted to cure the claim by
25   adding the -- adding allegations that Cymbiotika 'is informed
```

1    and believed' that Virun 'always intended to claim ownership

2    over any formula but kept these intentions hidden.'"

3            I would agree with Your Honor.  If that's all we

4    pled, that's not sufficient.  But we plead twice -- and what's

5    also interesting is the Court cites to paragraph 113 of the

6    Complaint, the Third Amended Complaint, which no one cited

7    specifically.  But I refer the Court to the quote on page 3 and

8    14 of our opposition.  This is an internal quote quoting the

9    paragraph 122 of the Third Amended Complaint.

10            "At the January 8th, 2019 meeting, Virun and Bromley

11   knew that rather than being 'the most common scenario,' Virun

12   had no contracts with any of its customers where the customer

13   owned the formula developed by Virun for that -- from that

14   customer's ideas."

15            That is not pled on information and belief.  That's

16   specifically pled.  But even if it was, Your Honor, under both

17   *Freud v. HP* and *Ramirez v. Bank of America*, scienter elements

18   are given a lower standard of specificity because the moving

19   party can't know it.

20            THE COURT:  Right.

21            MR. SHAEFFER:  But here we specifically say Virun

22   has alleged their most common practice is when a customer

23   brings an idea, the customer owns that product.  But they do

24   not have a single contract where that's the case.  So that

25   cannot be the most common practice.  That evidence, I believe,

```
 1   is sufficient to defeat summary judgment.  If they say there's
 2   no evidence of intent on summary judgment, I can -- and they
 3   said it's their common practice that customers own ideas, if I
 4   introduce evidence that they do not have a single contract with
 5   a customer where the customer owns the formula, instead all of
 6   those contracts specifically call out Virun owning the formula,
 7   then I've created at least a question of fact on that issue.
 8            I think it may have been an oversight, but again,
 9   that's paragraph 122, pages 3 and 14.  If you read the exact
10   paragraph, you'll notice that the point about the contracts is
11   not on information and belief.  The rest of the paragraph where
12   we make other allegations supporting intent are on information
13   and belief.
14            But those should be sufficient to -- still because
15   information and belief is sufficient on intent so long as they
16   are specific facts.  I can't just say informed and believed
17   they have scienter, but I have specific facts that I allege in
18   there as well.
19            And then Your Honor keeps going back to -- I think
20   that it's from plaintiff's brief -- that this is a false
21   promise case.  Our argument is we never would have disclosed
22   any of our ideas to Virun if Virun did not have an existing
23   practice of letting us let the customer who brings the idea
24   have that idea.  Because if we disclose the idea and then they
25   claim ownership, they now have our idea and can use our idea as
```

1   we've seen in the case in that they've served our formulas to

2   their other customers.  So we believe that is sufficient to

3   survive at the pleading stage.

4           Now, Your Honor did cite *Tortilla Factory* for the

5   proposition that information and belief is insufficient.

6   *Tortilla Factory* specifically addresses the other elements of

7   fraud.  In that instance, they were playing -- claiming on

8   information and belief that the sugar content of the product

9   was false.  And the Court is like you can figure that out

10  yourself.  You can't plead that on information and belief.

11          But it does not address the scienter issue which is

12  specifically addressed by *Ramirez versus Bank of America*,

13  643 F. Supp 3d 733 at 739.  It's probably the best case.  The

14  other one is an unreported opinion.

15          And since what we are claiming here -- it's a

16  fraudulent inducement case.  And it doesn't matter that we pled

17  it as fraud.  If you look to the case that Virun cites with

18  respect to the Economic Loss Rule, which the Court may need to

19  deal with now, so I can talk about that briefly if you'd like,

20  they cite the *Foster Poultry Farms* case.  In that case, fraud

21  was pled, and the Court said, well, they pled fraud, but this

22  is fraud.  They are claiming fraudulent inducement.  And that's

23  what we are claiming here.

24          Yes, would we hope to own the formulas?  Absolutely.

25  But -- and if Virun had just told us, hey, if you give us an

1   idea, you'll own it, that's a false promise.  But what they

2   said here is this is our common practice.  This is what we've

3   done in the past which is a higher degree of representation.

4   That's a representation of fact that we can rely upon because,

5   as Your Honor knows, people can always breach their promises.

6   But here they said this is what our practice has been.

7          And it is now undisputed that that is not true.

8   They have not been able to produce a single contract in this

9   case where the customer owns the formula based on an idea.  And

10  in that instance too, then, Your Honor, we should survive --

11  the negligent misrepresentation claim should survive because

12  it's not a false promise.

13         Real quick on economic loss because I don't know if

14  you're going to want to deal with it.  Here's the -- but it

15  just came to me.  And it's not in the briefing, but it came to

16  me in reviewing everything for the hearing.  Here's the

17  distinction we are drawing here.

18         Virun contends that they never agreed as part of a

19  contract that we would own the formulas.  If Virun prevails on

20  that argument, we then have a fraud claim because they made

21  those representations to us.  So it is a duty separate and

22  independent from the contract.

23         And even the *Foster Farms* case that they rely upon

24  which is -- *Foster Poultry Farms* is 868 F. Supp 2d 983.  In

25  that case, all parties agreed that fraudulent inducement is an

1   exception to the Economic Loss Rule.

2          Now, it didn't apply in *Foster Farms*, which

3   defendants rely on in their reply, because the false

4   representation was made after the contract was entered into.

5   And if it was made after the contract was entered into, it

6   cannot be fraudulent inducement.

7          I'd like to finally briefly address the issue with

8   respect to the intent issue on the interference with --

9   interference with contract -- tortious interference with

10  contract.

11         The Court says we have not pled with sufficient

12  specificity an intent to disrupt a contract.  And, Your Honor,

13  again, we are not subject to the heightened standard of proof

14  here.  We are subject to a plausibility standard.  So we really

15  don't need to plead specific facts.  But let me give you the

16  facts that support an intent to disrupt a contract.

17         Most obviously is let's say Mr. Bromley was just a

18  Good Samaritan, a Ralph Nader, and basically went online and

19  said don't buy this product because it contains cancer-causing

20  ingredients.  He's intending people to not buy the product by

21  saying that.  And in here he knows about our subscription.  So

22  he's doing that.

23         But if you look at paragraph 184, the intent can be

24  found from, first, Bromley started this campaign after he

25  learned we were selling a product that he wasn't manufacturing

1    which gives indication that he could be upset with us.  He then

2    does the entire campaign anonymously.  And if he really was a

3    Good Samaritan, why was he doing it anonymously?  And third, he

4    knew we had a subscription-based system.  So I believe under

5    the plausibility standard, we meet those requirements.

6              Unless the Court has any questions, I will rest.

7              THE COURT:  No.  That's it.  Thank you.

8              MR. SHAEFFER:  Thank you.

9              MR. NAQVI:  Thank you, Your Honor.  Just give me one

10   second to get my notes organized here.

11             THE COURT:  Sure.

12             MR. NAQVI:  Okay.  So first on the fraud claim,

13   counsel points to paragraph 122 and specifically just the first

14   sentence which appears to be the only sentence that's not

15   alleged on information and belief.

16             I think the issue here, Your Honor, is we are having

17   a moving target of the fraud claim.  You know, first it was a

18   misrepresentation claim.  Then in a prior instance, it was a

19   promissory fraud claim.  And now we are talking about

20   inducement.  And so we are having a moving target here.  But

21   let's talk about what's actually alleged.

22             What counsel points to in paragraph 122 about

23   whether Virun's existing customers at that time own the

24   formulas or not, first I will note that what counsel is doing

25   about referencing what has or has not been produced in

```
 1   discovery is not at issue here.  It's not in the pleading.
 2            And I just want to note for the record I'm very
 3   concerned about counsel's representation to the Court that we
 4   have not produced a single contract where the customer owns a
 5   formula.  That is patently false.  We have already produced
 6   that contract, multiple contracts.  And counsel deposed our
 7   chief operating officer last week, and he referenced at least
 8   three examples where the customer owns a contract.  So I will
 9   deal with that with counsel separately, but that is just a
10   false statement.  It's not an issue here, but I'm concerned
11   that he said that.
12            Going to paragraph 122, what counsel discussed is
13   not the alleged fraud.  Okay?  The alleged fraud is about who
14   is going to own these formulas in the future.  And I'll point
15   to paragraph 125, first sentence, "Virun's repeated
16   representations regarding formula ownership were critical to
17   inducing Cymbiotika's -- Cymbiotika to work with Virun."
18   That's the alleged fraud.
19            And so Your Honor has already noted that, you know,
20   that's a statement of future action.  I think that covers the
21   negligent misrepresentation claim.  But the statements of
22   scienter or whether my client had a specific intent to
23   defraud Cymbiotika, as Your Honor noted, they've had now
24   four opportunities to allege any facts in support of that.  And
25   everything is on information and belief.  We are well into
```

1   discovery here.  This isn't like a pleading that was filed

2   right at the outset.  They've had four opportunities.  And

3   everything is on information and belief.  Everything is

4   conclusory as Your Honor has noted.  And so, you know, I just

5   want to make that very clear.

6           On the Economic Loss Rule, which, again, I don't

7   know if Your Honor wants to get into it, but I do want to

8   respond to counsel's arguments.  From my perspective, I think

9   counsel has it backwards.  The Economic Loss Rule prevents a

10  party from taking a fraud claim -- or taking a contract claim

11  and turning it into a fraud claim.

12          We've already discussed and Your Honor has already,

13  you know, put in the tentative one of the alleged provisions of

14  the alleged oral agreement is that Cymbiotika would own the

15  formulations that Virun would make for it.  That's part of the

16  contract.

17          And so now they are attempting to sue Virun for

18  fraud based on the exact same thing that happened on the exact

19  same date when the alleged oral agreement was formed.  They

20  allege the fraud took place on January 8, 2019, and that the

21  contract was formed on January 8, 2019.  So I think this is a

22  clear example of why the Economic Loss Rule should apply.

23          And then let me get to the tortious interference

24  claim.  Again, I think counsel tried to argue facts that are

25  not in the pleadings.  I want to stick to the pleading.

1          There is a requirement to plead facts.  You know, I

2     understand there's a plausibility standard.  But you have to

3     plead facts to get to the plausibility threshold.  And

4     Your Honor's noted there are not any facts in here about how

5     Mr. Bromley specifically intended to disrupt customer -- to

6     disrupt these contracts.

7          And I think that ties to another point, which the

8     Court may or may not have meant to put in here, but it didn't

9     specifically address it, is that Cymbiotika still has not

10    identified with specificity any contract that Mr. Bromley knew

11    about and intended to interfere with.  In order to -- you know,

12    this is an intentional tort we are talking about here.

13         So in order to intentionally interfere with a

14    third-party contract, you have to know about that contract.  So

15    they point vaguely to subscription -- you know, our

16    subscribers.  You know, we cited many cases where that is

17    insufficient.  You have to provide at least a little more teeth

18    behind that.  You know, this group of subscribers or this

19    specific subscriber, subscribers of vitamin C on these dates,

20    something.  All we have to go off of is there were customer

21    subscriptions.  He intended to disrupt them.  That's not enough

22    even under the plausibility standard.

23         So that's the rest of what I'll say.  And if counsel

24    has anymore arguments, I may reserve a couple more minutes.

25              THE COURT:  Anything else, Mr. Shaeffer?

1          MR. SHAEFFER:  Just real quickly, Your Honor.

2          Counsel is correct that they have produced some

3    contracts.  And I'm not trying to misrepresent anything.  That

4    witness testified that as of January 8 -- all those contracts

5    postdate January 8th.  There are none before.  But that's --

6    he's right.  That's not part of the pleading.  But we allege

7    that there are none which should be sufficient.

8          His argument about the Economic Loss Rule hits the

9    exact point I made.  We allege it's a term of the contract.  If

10   it's a term of the contract, then there is no fraud.  But Virun

11   is alleging it's not a term of the contract.  If it's not a

12   term of the contract, of the oral contract, we were induced to

13   rely upon that.  So the Economic Loss Rule would apply

14   consistent with the *Foster Farm* case they cite.

15         But the case I would tell the Court to look at more

16   in this respect is the one we cite which is Lavar -- *Lazar v.*

17   *Superior Court*.  That's 12 Cal.4th.  It's at 631.  I'm

18   specifically looking at 649.  That's the case of the employee

19   who quit his job in New York, moved to Los Angeles.  He

20   understood that not only was he getting a job, but he was going

21   to be employed for a long period of time.  They terminated him

22   early.  There was a dispute as to whether or not there was --

23   the long period of time was part of it.

24         The Court specifically said that that is not subject

25   to the Economic Loss Rule because it's a fraud in the

1  inducement in the -- which is a duty independent of a contract.

2  You have a disputed term.  And it's either part of the

3  agreement, which would be breach of contract, but if it's not

4  part of the agreement, it's fraud.  And that's exactly what we

5  have here.  And the remedies, as we pointed out, would be very

6  different.  Thank you.

7        THE COURT:  Thank you.

8        MR. SHAEFFER:  Oh, I do have one other point.

9  There's another error in the Court's tentative.  I think there

10  were two that we saw.  On page 2 there's a reference that after

11  the relationship went south, there was a problem with timely

12  deliveries.

13        If you look at page 4 of our opposition, it was at

14  the time Virun actually began manufacturing for us.  It was

15  immediately upon manufacturing there were problems.  So the

16  delays did not occur when a dispute arose.

17        And on page 5, there's a statement that we are no

18  longer in possession of the invoices.  We have all the

19  invoices.  They have all the invoices.  Everyone has the

20  invoices.  There's just hundreds of them.  I didn't want to

21  attach hundreds of invoices to a Complaint.  Thank you.

22        THE COURT:  Thank you.

23        MR. NAQVI:  I'll be very brief, Your Honor.

24        THE COURT:  Thank you.

25        MR. NAQVI:  Thank you for your patience and time.

```
1              THE COURT:  No problem.
2              MR. NAQVI:  On the Economic Loss Rule, I -- we
3    actually may be in agreement here.  I think the point is they
4    need to choose a theory.  It's either contract or fraud.  And
5    if the Court wants to proceed with the contract claim, then
6    they can't have the fraud claim.  So, you know, to me, that's
7    where I stand.
8              So if the Court wants to say that the alleged oral
9    agreement exists or it's been sufficiently alleged, then, you
10   know, the Economic Loss Rule says, okay, you get to proceed in
11   the contract theory, not the fraud theory.  So, again, we may
12   just be speaking past each other.
13             On the invoices, counsel just said they have all the
14   invoices.  They alleged in the pleading that they don't have
15   them.  So, you know, I don't know what the disconnect there
16   was, but it may just not be material.
17             Thank you, Your Honor.
18             THE COURT:  Thank you both very much.  The matter is
19   taken under submission.  We'll issue an order as soon as
20   possible.
21             MR. SHAEFFER:  Thank you, Your Honor.
22             MR. NAQVI:  Thank you, Your Honor.
23             (At 11:55 a.m. the proceedings adjourned.)
24
25
```

1            **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5            I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6 COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7 FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8 THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9 THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10 STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11 ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12 IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13 CONFERENCE OF THE UNITED STATES.

14

15

16            DATED THIS _26TH_ DAY OF _OCTOBER, 2023._

17

18

19         /S/ MAREA WOOLRICH

20         _____

        MAREA WOOLRICH, CSR NO. 12698, CCRR

        FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25

'

**'always** [1] - 14:1
**'is** [1] - 13:25
**'the** [1] - 14:11

## 1

**10250** [1] - 2:9
**113** [1] - 14:5
**11:22** [1] - 3:2
**11:55** [1] - 25:23
**12** [1] - 23:17
**122** [5] - 14:9, 15:9, 19:13, 19:22, 20:12
**125** [1] - 20:15
**14** [2] - 14:8, 15:9
**15** [1] - 7:25
**153** [2] - 5:2, 7:15
**164** [1] - 7:15
**16th** [1] - 2:5
**184** [1] - 18:23
**1901** [1] - 2:5
**198** [1] - 10:10

## 2

**2** [1] - 24:10
**20** [1] - 3:1
**2019** [3] - 14:10, 21:20, 21:21
**2023** [1] - 3:1
**22-CV** [1] - 3:6
**2d** [1] - 17:24

## 3

**3** [2] - 14:7, 15:9
**325** [1] - 3:6
**34** [2] - 6:23, 7:8
**36** [1] - 7:9
**3d** [1] - 16:13

## 4

**4** [2] - 3:5, 24:13

## 5

**5** [2] - 6:11, 24:17
**51** [1] - 7:12

## 6

**6** [1] - 4:18
**62** [1] - 7:12
**631** [1] - 23:17
**643** [1] - 16:13
**649** [1] - 23:18

## 7

**733** [1] - 16:13
**739** [1] - 16:13
**74** [1] - 7:9
**76** [1] - 7:9

## 8

**8** [5] - 13:20, 13:21, 21:20, 21:21, 23:4
**80** [1] - 7:9
**868** [1] - 17:24
**8th** [2] - 14:10, 23:5

## 9

**900** [1] - 2:9
**90067** [2] - 2:6, 2:10
**983** [1] - 17:24
**9th** [1] - 11:9

## A

**A.M** [1] - 3:2
**a.m** [1] - 25:23
**able** [3] - 9:6, 13:8, 17:8
**absolutely** [1] - 16:24
**acknowledges** [1] - 4:19
**action** [1] - 20:20
**activity** [2] - 10:9, 11:13
**adding** [2] - 13:25
**address** [8] - 4:9, 4:22, 10:3, 13:1, 13:6, 16:11, 18:7, 22:9
**addressed** [1] - 16:12
**addresses** [1] - 16:6
**adjourned** [1] - 25:23
**admittedly** [1] - 9:24
**advanced** [1] - 8:21
**advances** [1] - 7:17
**advertising** [6] - 10:4, 10:9, 10:12, 10:21, 11:13, 13:8
**agree** [3] - 5:23, 13:6, 14:3
**agreed** [2] - 17:18, 17:25
**agreement** [26] - 4:18, 4:24, 4:25, 5:10, 5:20, 5:22, 6:6, 6:14, 6:15, 7:2, 7:23, 8:2, 8:3, 8:6, 8:7, 8:11, 8:16, 9:1, 9:19, 9:20, 21:14, 21:19, 24:3, 24:4, 25:3, 25:9

**akin** [1] - 11:8
**al** [1] - 3:6
**allegation** [5] - 5:6, 10:7, 11:7, 11:11, 11:17
**allegations** [8] - 4:23, 5:7, 5:16, 5:19, 11:24, 12:12, 13:25, 15:12
**allege** [8] - 7:12, 11:19, 11:22, 15:17, 20:24, 21:20, 23:6, 23:9
**alleged** [42] - 4:16, 4:23, 4:24, 5:9, 5:10, 5:14, 5:19, 5:20, 6:1, 6:6, 6:14, 6:15, 7:10, 7:13, 7:14, 7:18, 8:3, 8:6, 8:7, 8:10, 8:11, 8:16, 8:17, 9:1, 9:18, 9:19, 10:13, 11:3, 12:6, 14:22, 19:15, 19:21, 20:13, 20:18, 21:13, 21:14, 21:19, 25:8, 25:9, 25:14
**allegedly** [1] - 6:17
**alleges** [2] - 6:17, 6:25
**alleging** [1] - 23:11
**alone** [1] - 10:24
**amend** [1] - 11:6
**Amended** [5] - 3:19, 3:20, 5:2, 6:24, 14:9
**amended** [4] - 3:22, 4:19, 10:10, 14:6
**America** [2] - 14:17, 16:12
**AND** [2] - 2:3, 2:3, 2:7
**Angeles** [2] - 2:6, 2:10, 23:19
**ANGELES** [1] - 3:1
**anonymously** [2] - 19:2, 19:3
**appearances** [1] - 3:7
**APPEARANCES** [1] - 2:1
**apply** [3] - 18:2, 21:22, 23:13
**appreciate** [2] - 4:4, 10:2
**appropriate** [1] - 9:23
**argue** [1] - 21:24
**argued** [1] - 6:12
**argument** [7] - 6:12, 7:21, 10:14, 13:1, 15:21, 17:20, 23:8
**arguments** [4] - 9:3, 13:20, 21:8, 22:24
**arose** [1] - 24:16
**arrangement** [1] - 6:18

**artfully** [1] - 4:20
**aside** [1] - 6:4
**assume** [1] - 3:23
**attach** [2] - 5:23, 24:21
**attached** [1] - 7:19
**attempted** [1] - 13:24
**attempting** [1] - 21:17
**audience** [3] - 10:18, 10:19, 10:25
**Avenue** [1] - 2:5
**average** [3] - 5:11, 5:15, 9:6

## B

**backtracked** [1] - 7:24
**backwards** [1] - 21:9
**Bank** [2] - 14:17, 16:12
**based** [5] - 5:1, 7:18, 17:9, 19:4, 21:18
**batch** [1] - 7:4
**began** [1] - 24:14
**behalf** [2] - 3:10, 3:13
**behind** [1] - 22:18
**belief** [11] - 8:4, 14:15, 15:11, 15:13, 15:15, 16:5, 16:8, 16:10, 19:15, 20:25, 21:3
**believed'** [1] - 14:1
**best** [1] - 16:13
**between** [4] - 7:4, 11:14, 11:24, 13:8
**bit** [1] - 7:20
**Boulevard** [1] - 2:9
**breach** [14] - 4:13, 4:21, 5:13, 7:18, 7:22, 7:23, 7:25, 8:1, 8:6, 8:7, 8:8, 8:15, 17:5, 24:3
**breached** [2] - 6:1, 6:18
**breaches** [1] - 7:14
**brief** [2] - 15:20, 24:23
**briefing** [1] - 17:15
**briefly** [2] - 16:19, 18:7
**bringing** [1] - 8:12
**brings** [2] - 14:23, 15:23
**broad** [1] - 5:8
**broader** [1] - 9:8
**Bromley** [6] - 12:12, 14:10, 18:17, 18:24, 22:5, 22:10
**BROMLEY** [1] - 2:3
**Bromley's** [2] - 10:9, 11:13
**buckets** [1] - 4:9

**business** [2] - 6:18, 8:1
**buy** [2] - 18:19, 18:20
**BY** [2] - 2:5, 2:9

## C

**CA** [2] - 2:6, 2:10
**Cal.4th** [1] - 23:17
**CALIFORNIA** [1] - 3:1
**campaign** [2] - 18:24, 19:2
**cancellation** [2] - 10:8, 11:12
**cancellations** [6] - 11:18, 11:20, 11:25, 12:11, 12:17, 13:10
**cancer** [3] - 13:14, 13:16, 18:19
**cancer-causing** [1] - 18:19
**cannot** [2] - 14:25, 18:6
**case** [15] - 9:23, 14:24, 15:21, 16:1, 16:13, 16:16, 16:17, 16:20, 17:9, 17:23, 17:25, 23:14, 23:15, 23:18
**cases** [1] - 22:16
**caused** [1] - 11:20
**causing** [2] - 12:5, 18:19
**changed** [1] - 13:9
**changing** [1] - 5:5
**chief** [1] - 20:7
**choose** [1] - 25:4
**Circuit** [1] - 11:9
**cite** [4] - 16:4, 16:20, 23:14, 23:16
**cited** [3] - 10:7, 14:6, 22:16
**cites** [2] - 14:5, 16:17
**claim** [30] - 4:13, 4:14, 4:21, 7:18, 8:1, 8:15, 8:25, 10:3, 10:4, 10:12, 10:21, 11:3, 11:6, 13:23, 13:24, 14:1, 15:25, 17:11, 17:20, 19:12, 19:17, 19:18, 19:19, 20:21, 21:10, 21:11, 21:24, 25:5, 25:6
**claiming** [4] - 16:7, 16:15, 16:22, 16:23
**claims** [1] - 4:9
**clarity** [1] - 6:10
**clear** [5] - 8:8, 8:15, 8:24, 21:5, 21:22
**client** [2] - 9:5, 20:22
**close** [1] - 12:17

color [1] - 6:2
combination [1] - 6:15
coming [1] - 10:2
common [5] - 14:11,
14:22, 14:25, 15:3,
17:2
complainant's [1] -
3:20
complaint [2] - 9:5
Complaint [8] - 3:19,
3:21, 12:20, 14:6,
14:9, 24:21
complete [1] - 5:4
concepts [1] - 9:8
concerned [2] - 20:3,
20:10
conclusion [1] - 10:23
conclusory [1] - 21:4
concomitant [2] -
10:9, 11:13
conditions [1] - 12:15
confusion [1] - 6:9
consistent [2] - 8:5,
23:14
Constellation [1] - 2:9
contains [1] - 18:19
contends [1] - 17:18
content [1] - 16:8
context [1] - 12:12
continue [1] - 7:9
contract [40] - 4:13,
4:21, 5:14, 6:25,
7:18, 8:1, 8:15, 8:25,
9:8, 9:11, 14:24,
15:4, 17:8, 17:19,
17:22, 18:4, 18:5,
18:9, 18:10, 18:12,
18:16, 20:4, 20:6,
20:8, 21:10, 21:16,
21:21, 22:10, 22:14,
23:9, 23:10, 23:11,
23:12, 24:1, 24:3,
25:4, 25:5, 25:11
contracts [7] - 14:12,
15:6, 15:10, 20:6,
22:6, 23:3, 23:4
contractual [2] - 6:14,
6:17
contradict [1] - 6:20
contradiction [1] -
6:21
contradictory [1] -
6:12
correct [1] - 23:2
counsel [14] - 3:7,
3:24, 13:2, 19:13,
19:22, 19:24, 20:6,
20:9, 20:12, 21:9,
21:24, 22:23, 23:2,
25:13

COUNSEL [1] - 2:1
counsel's [2] - 20:3,
21:8
counterclaim [1] -
10:10
counterclaims [6] -
3:21, 3:22, 4:19,
6:13, 6:20, 6:24
Counterclaims [2] -
5:2, 6:24
COUNTERDEFENDA
NT [1] - 2:3
couple [1] - 22:24
COURT [15] - 3:15,
3:17, 4:2, 9:2, 12:8,
13:3, 14:20, 19:7,
19:11, 22:25, 24:7,
24:22, 24:24, 25:1,
25:18
court [1] - 23:17
Court [34] - 4:8, 4:10,
4:11, 4:18, 5:21,
5:22, 6:4, 6:11, 7:8,
7:19, 8:12, 10:2,
10:6, 11:5, 11:6,
11:15, 12:2, 13:7,
13:19, 13:23, 14:5,
14:7, 16:9, 16:18,
16:21, 18:11, 19:6,
20:3, 22:8, 23:15,
23:24, 25:5, 25:8
Court's [3] - 4:15,
13:20, 24:9
COURTROOM -
3:5, 3:16
covenant [1] - 4:14
covers [1] - 20:20
crafted [1] - 4:20
created [1] - 15:7
critical [1] - 20:16
cross [2] - 3:11, 3:13
CROSS [1] - 2:7
cross-defendants [2]
- 3:11, 3:13
CROSS-
DEFENDANTS [1] -
2:7
cure [1] - 13:24
current [4] - 6:21,
6:23, 7:17
customer [13] - 10:8,
11:12, 14:12, 14:22,
14:23, 15:5, 15:23,
17:9, 20:4, 20:8,
22:5, 22:20
customer's [1] - 14:14
customers [4] - 14:12,
15:3, 16:2, 19:23
Cymbiotika [24] - 3:6,
3:14, 4:16, 4:25,

6:14, 6:16, 7:1, 7:4,
7:24, 8:21, 8:25,
10:6, 10:7, 10:13,
10:22, 11:7, 11:11,
13:24, 13:25, 20:17,
20:23, 21:14, 22:9
Cymbiotika's [6] -
3:21, 5:1, 5:3, 5:7,
8:15, 20:17

D

date [2] - 5:18, 21:19
dates [2] - 8:22, 22:19
deal [4] - 12:21, 16:19,
17:14, 20:9
deceive [1] - 10:17
deceived [2] - 10:17,
10:25
deception [5] - 10:19,
10:25, 11:22, 12:4,
12:5
decides [1] - 8:10
decisions [4] - 10:20,
11:1, 11:23, 12:5
deep [1] - 8:18
defeat [2] - 9:15, 15:1
defend [1] - 9:6
DEFENDANT [1] - 2:3
defendants [4] - 3:11,
3:13, 18:3
DEFENDANTS [2] -
2:7
defending [1] - 5:6
deficient [1] - 11:19
defined [1] - 8:2
defraud [1] - 20:23
degree [1] - 17:3
delays [1] - 24:16
deliver [1] - 7:11
delivered [1] - 7:11
deliveries [1] - 24:12
delivery [2] - 5:18,
8:22
deny [1] - 4:10
dependent [1] - 4:14
deposed [1] - 20:6
depositions [2] - 8:19,
8:20
DEPUTY [2] - 3:5, 3:16
describe [1] - 7:9
describing [1] - 10:23
detail [1] - 7:20
detailed [2] - 4:4, 4:6
determine [1] - 6:5
developed [2] - 5:1,
14:13
difference [1] - 12:10
different [1] - 24:6
dip [3] - 11:7, 12:13,

12:14
direct [1] - 7:8
directly [1] - 13:10
disagree [1] - 9:2
disclose [1] - 15:24
disclosed [1] - 15:21
disconnect [1] - 25:15
discovered [1] - 9:9
discovery [6] - 8:13,
8:19, 8:20, 8:21,
20:1, 21:1
discussed [2] - 20:12,
21:12
dismiss [4] - 3:18,
9:13, 9:15, 10:14
dismissed [1] - 11:6
dispute [3] - 7:17,
23:22, 24:16
disputed [1] - 24:2
disrupt [5] - 18:12,
18:16, 22:5, 22:6,
22:21
distill [1] - 8:25
distinction [2] - 11:14,
17:17
distributor [1] - 9:20
done [1] - 17:3
draw [1] - 12:19
drawing [1] - 17:17
duty [2] - 17:21, 24:1

E

early [3] - 9:24, 23:22
Economic [10] -
16:18, 18:1, 21:6,
21:9, 21:22, 23:8,
23:13, 23:25, 25:2,
25:10
economic [1] - 17:13
either [3] - 9:13, 24:2,
25:4
elements [12] - 10:12,
10:13, 10:15, 10:21,
10:23, 11:2, 11:22,
12:4, 12:9, 12:23,
14:17, 16:6
employed [1] - 23:21
employee [1] - 23:18
ended [1] - 5:15
entered [2] - 18:4,
18:5
entire [1] - 19:2
error [1] - 24:9
establish [2] - 9:10,
11:9
et [1] - 3:6
evidence [4] - 11:8,
14:25, 15:2, 15:4
exact [4] - 15:9, 21:18,

23:9
exactly [1] - 24:4
example [3] - 4:24,
6:23, 21:22
examples [4] - 5:21,
6:2, 7:16, 20:8
exception [1] - 18:1
excuse [1] - 3:20
existence [3] - 4:17,
9:17, 9:18
existing [3] - 5:5,
15:22, 19:23
exists [2] - 6:21, 25:9
experienced [1] - 11:7
explain [3] - 6:22,
7:16, 11:18
explained [1] - 7:20
expressly [2] - 6:24,
7:12

F

fact [2] - 15:7, 17:4
Factory [2] - 16:4,
16:6
facts [4] - 10:13,
10:16, 10:23, 11:1,
12:21, 15:16, 15:17,
18:15, 18:16, 20:24,
21:24, 22:1, 22:3,
22:4
fails [1] - 11:19
failure [1] - 11:21
fair [1] - 4:21
false [11] - 10:4,
10:12, 10:21, 13:8,
15:20, 16:9, 17:1,
17:12, 18:3, 20:5,
20:10
farm [1] - 23:14
Farms [2] - 16:20,
18:2
farms [2] - 17:23,
17:24
few [1] - 4:10
figure [1] - 16:9
filed [1] - 21:1
finally [1] - 18:7
first [10] - 3:19, 3:25,
4:13, 9:4, 18:24,
19:12, 19:13, 19:17,
19:24, 20:15
five [1] - 10:12
fixed [1] - 10:15
Floor [1] - 2:5
flowed [1] - 6:14
FOR [2] - 2:3, 2:7
formed [2] - 21:19,
21:21
formula [12] - 4:17,

4:25, 7:2, 8:2, 8:16, 14:2, 14:13, 15:5, 15:6, 17:9, 20:5, 20:16
**formulas** [5] - 16:1, 16:24, 17:19, 19:24, 20:14
**formulation** [2] - 5:4, 9:3
**formulations** [1] - 21:15
**forth** [3] - 7:7, 8:21, 8:23
**foster** [4] - 16:20, 17:23, 17:24, 23:14
**Foster** [1] - 18:2
**four** [2] - 20:24, 21:2
**FOX** [1] - 2:8
**fraud** [24] - 13:21, 13:23, 16:7, 16:17, 16:20, 16:21, 16:22, 17:20, 19:12, 19:17, 19:19, 20:13, 20:18, 21:10, 21:11, 21:18, 21:20, 23:10, 23:25, 24:4, 25:4, 25:6, 25:11
**fraudulent** [4] - 16:16, 16:22, 17:25, 18:6
**Freud** [1] - 14:17
**FRIDAY** [1] - 3:1
**front** [1] - 12:21
**fundamental** [1] - 9:3
**future** [2] - 20:14, 20:20

### G

**general** [1] - 11:7
**generic** [1] - 12:13
**given** [2] - 12:11, 14:18
**goods** [1] - 7:1
**group** [1] - 22:18
**guaranteed** [2] - 5:16, 5:18
**guess** [1] - 9:2

### H

**HAMPTON** [1] - 2:4
**happy** [1] - 12:8
**hard** [6] - 3:14, 5:6, 5:13, 6:3, 11:2, 11:14
**health** [2] - 13:13, 13:15
**hear** [1] - 3:25
**hearing** [1] - 17:16
**heightened** [2] -

3:17, 18:13
**held** [1] - 11:6
**helpful** [1] - 6:10
**hidden** [1] - 14:2
**higher** [1] - 17:3
**hits** [1] - 23:8
**Honor** [31] - 3:9, 3:12, 4:1, 4:4, 6:19, 8:10, 10:1, 12:25, 13:4, 13:5, 13:7, 14:3, 14:16, 15:19, 16:4, 17:5, 17:10, 18:12, 19:9, 19:16, 20:19, 20:23, 21:4, 21:7, 21:12, 23:1, 24:23, 25:17, 25:21, 25:22
**Honor's** [1] - 22:4
**hope** [1] - 16:24
**hopefully** [2] - 6:10, 10:4
**HP** [1] - 14:17
**hundreds** [2] - 24:20, 24:21

### I

**idea** [11] - 5:3, 5:8, 14:23, 15:23, 15:24, 15:25, 17:1, 17:9
**ideas** [4] - 5:1, 14:14, 15:3, 15:22
**identification** [1] - 4:23
**identified** [2] - 7:3, 22:10
**immediately** [1] - 24:15
**impact** [1] - 13:12
**implied** [1] - 4:14
**important** [2] - 8:13, 8:18
**imprecise** [1] - 9:14
**INC** [1] - 2:3
**Inc** [1] - 3:6
**include** [1] - 8:17
**increase** [4] - 10:8, 11:12, 11:17, 11:25
**independent** [2] - 17:22, 24:1
**indication** [1] - 19:1
**individual** [1] - 9:21
**induced** [1] - 23:12
**inducement** [6] - 16:16, 16:22, 17:25, 18:6, 19:20, 24:1
**inducing** [1] - 20:17
**inference** [1] - 12:19
**influence** [3] - 10:20, 11:23, 12:5
**influenced** [1] - 11:1

**information** [10] - 14:15, 15:11, 15:12, 15:15, 16:5, 16:8, 16:10, 19:15, 20:25, 21:3
**informed** [2] - 13:25, 15:16
**ingredient** [2] - 5:4, 5:5
**ingredients** [3] - 13:14, 13:15, 18:20
**injury** [4] - 10:7, 10:11, 11:4, 11:9
**instance** [3] - 16:7, 17:10, 19:18
**instead** [1] - 15:5
**insufficient** [3] - 11:15, 16:5, 22:17
**intended** [4] - 14:1, 22:5, 22:11, 22:21
**intending** [1] - 18:20
**intends** [1] - 4:10
**intent** [8] - 15:2, 15:12, 15:15, 18:8, 18:12, 18:16, 18:23, 20:22
**intentional** [1] - 22:12
**intentionally** [1] - 22:13
**intentions** [1] - 14:2
**interesting** [1] - 14:5
**interfere** [2] - 22:11, 22:13
**interference** [4] - 18:8, 18:9, 21:23
**internal** [1] - 14:8
**Internet** [1] - 13:13
**introduce** [1] - 15:4
**invoices** [21] - 6:7, 7:3, 7:7, 7:10, 7:11, 7:13, 7:19, 7:23, 8:8, 8:17, 8:22, 9:17, 9:21, 24:18, 24:19, 24:20, 24:21, 25:13, 25:14
**issue** [10] - 6:7, 10:15, 15:7, 16:11, 18:7, 18:8, 19:16, 20:1, 20:10, 25:19
**issued** [1] - 3:23
**Item** [1] - 3:5
**iteration** [1] - 6:13
**itself** [1] - 9:6

### J

**January** [5] - 14:10, 21:20, 21:21, 23:4, 23:5
**job** [2] - 23:19, 23:20

**JOHN** [1] - 2:9
**John** [1] - 3:13
**judgment** [2] - 15:1, 15:2

### K

**KAZIM** [1] - 2:5
**Kazim** [1] - 3:9
**keeps** [1] - 15:19
**kept** [1] - 14:2
**kind** [1] - 7:16
**knows** [2] - 17:5, 18:21

### L

**last** [5] - 3:17, 4:5, 10:3, 13:6, 20:7
**late** [1] - 4:5
**Lavar** [1] - 23:16
**law** [1] - 11:10
**Lazar** [1] - 23:16
**lead** [1] - 5:11
**learned** [1] - 18:25
**least** [6] - 9:23, 12:11, 12:20, 15:7, 20:7, 22:17
**leave** [1] - 11:6
**leaves** [1] - 6:7
**legal** [1] - 10:23
**letting** [1] - 15:23
**likely** [2] - 6:5, 10:20
**limitation** [1] - 9:22
**limited** [2] - 8:15, 9:1
**link** [2] - 11:24, 13:10
**linkage** [1] - 13:8
**LLC** [1] - 3:6
**LLP** [2] - 2:4, 2:8
**look** [7] - 12:3, 12:8, 12:23, 16:17, 18:23, 23:15, 24:13
**looking** [1] - 23:18
**Los** [3] - 2:6, 2:10, 23:19
**LOS** [1] - 3:1
**Loss** [10] - 16:18, 18:1, 21:6, 21:9, 21:22, 23:8, 23:13, 23:25, 25:2, 25:10
**loss** [1] - 17:13
**lower** [1] - 14:18

### M

**manifested** [1] - 9:21
**manufacture** [1] - 7:5
**manufactured** [1] - 7:1
**manufacturing** [8] -

4:17, 6:15, 7:2, 8:2, 8:16, 18:25, 24:14, 24:15
**market** [1] - 12:15
**material** [3] - 10:19, 11:14, 25:16
**materials** [1] - 5:12
**matter** [4] - 6:20, 11:9, 16:16, 25:18
**matters** [1] - 11:24
**mean** [1] - 5:3
**meaningful** [2] - 10:8, 11:12
**means** [1] - 5:8
**meant** [1] - 22:8
**media** [3] - 11:8, 11:21, 11:25
**meet** [1] - 19:5
**meeting** [1] - 14:10
**minutes** [1] - 22:24
**misrepresent** [1] - 23:3
**misrepresentation** [4] - 13:22, 17:11, 19:18, 20:21
**missing** [1] - 12:1
**misstatements** [1] - 13:10
**morning** [2] - 3:9, 3:12
**most** [6] - 4:6, 4:20, 14:11, 14:22, 14:25, 18:17
**motion** [5] - 4:10, 7:21, 9:12, 9:15, 10:14
**motions** [1] - 3:18
**move** [1] - 9:14
**moved** [1] - 23:19
**moving** [4] - 3:25, 14:18, 19:17, 19:20
**MR** [19] - 3:9, 3:12, 4:1, 4:3, 10:1, 12:25, 13:4, 13:5, 14:21, 19:8, 19:9, 19:12, 23:1, 24:8, 24:23, 24:25, 25:2, 25:21, 25:22
**MULLIN** [1] - 2:4
**Mullin** [1] - 3:10
**multiple** [1] - 20:6

### N

**nader** [1] - 18:18
**name** [1] - 3:14
**NAQVI** [13] - 2:5, 3:9, 4:1, 4:3, 10:1, 12:25, 13:4, 13:9, 19:12, 24:23, 24:25, 25:2, 25:22

**Naqvi** [1] - 3:9
**need** [4] - 5:25, 16:18, 18:15, 25:4
**needs** [1] - 9:1
**negate** [1] - 9:18
**negligent** [3] - 13:22, 17:11, 20:21
**never** [2] - 15:21, 17:18
**new** [1] - 11:11
**New** [1] - 23:19
**night** [1] - 4:5
**none** [2] - 23:5, 23:7
**note** [2] - 19:24, 20:2
**noted** [5] - 7:19, 20:19, 20:23, 21:4, 22:4
**notes** [1] - 19:10
**notice** [2] - 4:21, 15:10
**numbered** [1] - 13:21

O

**obviously** [2] - 13:1, 18:17
**occur** [1] - 24:16
**OCTOBER** [1] - 3:1
**OF** [1] - 2:1
**officer** [1] - 20:7
**once** [1] - 12:21
**one** [8] - 4:24, 7:24, 14:6, 16:14, 19:9, 21:13, 23:16, 24:8
**ones** [1] - 6:21
**online** [1] - 18:18
**oOo** [1] - 3:3
**open** [1] - 5:15
**open-ended** [1] - 5:15
**operating** [1] - 20:7
**opinion** [2] - 13:20, 16:14
**opportunities** [2] - 20:24, 21:2
**opposition** [4] - 7:25, 8:5, 14:8, 24:13
**oral** [19] - 4:17, 4:23, 4:25, 5:10, 5:19, 5:22, 6:6, 7:22, 8:6, 8:7, 8:10, 8:16, 9:1, 9:18, 9:19, 21:14, 21:19, 23:12, 25:8
**order** [6] - 8:3, 8:14, 11:5, 22:11, 22:13, 25:19
**orders** [14] - 6:7, 6:16, 7:3, 7:7, 7:10, 7:13, 7:18, 7:23, 8:7, 8:17, 8:22, 9:16, 9:17, 9:21

**organized** [1] - 19:10
**outset** [1] - 21:2
**overarching** [5] - 6:15, 6:18, 8:1, 9:19, 9:20
**oversight** [1] - 15:8
**own** [8] - 4:25, 15:3, 16:24, 17:1, 17:19, 19:23, 20:14, 21:14
**owned** [1] - 14:13
**ownership** [3] - 14:1, 15:25, 20:16
**owning** [1] - 15:6
**owns** [5] - 14:23, 15:5, 17:9, 20:4, 20:8

P

**page** [9] - 4:18, 6:11, 7:25, 13:20, 13:21, 14:7, 24:10, 24:13, 24:17
**pages** [2] - 13:21, 15:9
**pandemic** [1] - 12:15
**paragraph** [13] - 5:2, 6:23, 10:10, 14:5, 14:9, 15:9, 15:10, 15:11, 18:23, 19:13, 19:22, 20:12, 20:15
**paragraphs** [3] - 7:8, 7:12, 7:15
**part** [7] - 4:7, 17:18, 21:15, 23:6, 23:23, 24:2, 24:4
**parties** [2] - 9:9, 17:25
**parties'** [1] - 7:2
**PARTY** [1] - 2:3
**party** [6] - 3:10, 3:20, 3:25, 14:19, 21:10, 22:14
**party's** [1] - 3:14
**past** [2] - 17:3, 25:12
**patently** [1] - 20:5
**patience** [1] - 24:25
**people** [2] - 17:5, 18:20
**perhaps** [1] - 4:11
**period** [2] - 23:21, 23:23
**perspective** [1] - 21:8
**PHILIP** [1] - 2:3
**piece** [1] - 11:4
**place** [1] - 21:20
**plaintiff** [1] - 3:8
**PLAINTIFF** [1] - 2:3
**plaintiff's** [1] - 15:20
**plausibility** [6] - 13:17, 18:14, 19:5, 22:2, 22:3, 22:22
**playing** [1] - 16:7
**plead** [5] - 14:4, 16:10,

18:15, 22:1, 22:3
**pleading** [14] - 4:20, 6:8, 6:12, 6:22, 7:17, 7:20, 9:12, 12:6, 16:3, 20:1, 21:1, 21:25, 23:6, 25:14
**pleadings** [1] - 21:25
**pled** [9] - 10:7, 10:16, 14:4, 14:15, 14:16, 16:16, 16:21, 18:11
**point** [13] - 4:11, 5:20, 6:10, 8:9, 13:6, 15:10, 20:14, 22:7, 22:15, 23:9, 24:8, 25:3
**pointed** [1] - 24:5
**points** [2] - 19:13, 19:22
**portion** [1] - 13:22
**possession** [1] - 24:18
**possible** [1] - 25:20
**post** [2] - 11:8, 11:21
**postdate** [1] - 23:5
**posted** [1] - 13:13
**posts** [3] - 11:18, 11:25, 12:18
**Poultry** [1] - 16:20
**poultry** [1] - 17:24
**practice** [7] - 9:9, 14:22, 14:25, 15:3, 15:23, 17:2, 17:6
**predicated** [1] - 8:1
**pretty** [1] - 5:14
**prevails** [1] - 17:19
**prevents** [1] - 21:9
**price** [2] - 6:25, 7:6
**problem** [2] - 24:11, 25:1
**problems** [1] - 24:15
**proceed** [2] - 25:5, 25:10
**proceedings** [1] - 25:23
**process** [1] - 9:10
**produce** [1] - 17:8
**produced** [4] - 19:25, 20:4, 20:5, 23:2
**product** [6] - 7:11, 14:23, 16:8, 18:19, 18:20, 18:25
**production** [1] - 5:11
**products** [2] - 5:17, 7:14
**promise** [3] - 15:21, 17:1, 17:12
**promises** [1] - 17:5
**promissory** [1] - 19:19
**proof** [2] - 13:18, 18:13

**proposition** [1] - 16:5
**provide** [4] - 6:2, 7:16, 22:17
**provision** [1] - 5:14
**provisions** [1] - 21:13
**purchase** [5] - 6:7, 6:16, 7:3, 7:7, 7:10, 7:13, 7:18, 7:23, 8:3, 8:7, 8:17, 8:22, 9:16, 9:17, 9:21
**purchasing** [4] - 10:20, 11:1, 11:23, 12:5
**purported** [1] - 4:17
**purposes** [1] - 8:13
**put** [2] - 21:13, 22:8

Q

**quantity** [3] - 5:5, 7:1, 7:6
**questions** [1] - 19:6
**quick** [1] - 17:3
**quickly** [1] - 23:1
**quit** [1] - 23:19
**quote** [3] - 6:13, 14:7, 14:8
**quoted** [1] - 5:2
**quoting** [1] - 14:8

R

**raised** [1] - 12:24
**Ralph** [1] - 18:18
**Ramirez** [2] - 14:17, 16:12
**rather** [2] - 8:3, 14:11
**raw** [1] - 5:12
**read** [1] - 15:9
**reading** [1] - 12:6
**real** [2] - 17:13, 23:1
**really** [4] - 7:20, 8:13, 18:14, 19:2
**reason** [2] - 8:12, 8:18
**reasonable** [2] - 9:7, 12:19
**reasoned** [1] - 4:7
**reasons** [1] - 5:21
**receipt** [1] - 5:12
**recites** [1] - 10:22
**reconsider** [2] - 4:12, 12:3
**record** [1] - 20:2
**refer** [3] - 13:7, 13:19, 14:7
**reference** [1] - 24:10
**referenced** [2] - 6:8, 20:7
**referencing** [1] - 19:25
**referred** [1] - 9:14

**regarding** [3] - 5:7, 12:4, 20:16
**relates** [2] - 6:18, 11:4
**relating** [1] - 6:25
**relationship** [2] - 6:17, 24:11
**rely** [4] - 17:4, 17:23, 18:3, 23:13
**remedies** [1] - 24:5
**repeated** [1] - 20:15
**reply** [1] - 18:3
**representation** [4] - 17:3, 17:4, 18:4, 20:3
**representations** [2] - 17:21, 20:16
**requirement** [1] - 22:1
**requirements** [1] - 19:5
**reserve** [2] - 13:1, 22:24
**respect** [6] - 9:16, 12:10, 13:23, 16:18, 18:8, 23:16
**respectfully** [2] - 6:19, 12:3
**respond** [1] - 21:8
**rest** [5] - 15:11, 19:6, 22:23
**result** [1] - 11:21
**review** [1] - 3:24
**reviewing** [1] - 17:16
**RICHTER** [1] - 2:4
**ROTHSCHILD** [1] - 2:8
**rule** [1] - 9:15
**Rule** [10] - 16:18, 18:1, 21:6, 21:9, 21:22, 23:8, 23:13, 23:25, 25:2, 25:10
**ruled** [1] - 5:23
**ruling** [1] - 4:15
**run** [1] - 13:9

S

**SA** [1] - 3:6
**sales** [4] - 11:8, 12:13, 12:14, 13:9
**Samaritan** [2] - 18:18, 19:3
**saw** [3] - 10:7, 11:11, 24:10
**scenario** [1] - 14:11
**scienter** [4] - 14:17, 15:17, 16:11, 20:22
**second** [1] - 19:10
**Second** [2] - 3:19, 3:20
**see** [1] - 12:3

| | | | | |
|---|---|---|---|---|
| **seeing** [1] - 11:2<br>**segment** [6] - 10:18, 10:24, 11:23, 12:4<br>**selling** [1] - 18:25<br>**sentence** [3] - 19:14, 20:15<br>**separate** [1] - 17:21<br>**separately** [2] - 7:2, 20:9<br>**served** [1] - 16:1<br>**set** [1] - 7:6<br>**setting** [1] - 6:4<br>**SHAEFFER** [8] - 2:9, 3:12, 13:5, 14:21, 19:8, 23:1, 24:8, 25:21<br>**Shaeffer** [2] - 3:13, 22:25<br>**SHEPPARD** [1] - 2:4<br>**Sheppard** [1] - 3:10<br>**shorter** [1] - 10:5<br>**show** [1] - 13:8<br>**showing** [1] - 13:9<br>**single** [5] - 5:4, 14:24, 15:4, 17:8, 20:4<br>**sitting** [1] - 9:23<br>**social** [3] - 11:8, 11:21, 11:25<br>**sod** [1] - 13:7<br>**soon** [1] - 25:19<br>**sorry** [1] - 3:16<br>**sort** [2] - 8:14, 9:7<br>**south** [1] - 24:11<br>**Southland** [1] - 13:7<br>**speaking** [1] - 25:12<br>**specific** [10] - 5:18, 7:5, 7:13, 8:3, 12:11, 15:16, 15:17, 18:15, 20:22, 22:19<br>**specifically** [15] - 5:9, 7:3, 7:6, 11:20, 14:7, 14:16, 14:21, 15:6, 16:6, 16:12, 19:13, 22:5, 22:9, 23:18, 23:24<br>**specificity** [3] - 14:18, 18:12, 22:10<br>**specifics** [1] - 9:10<br>**spell** [1] - 5:24<br>**stage** [6] - 9:5, 9:12, 9:25, 12:20, 12:22, 16:3<br>**stand** [1] - 25:7<br>**standard** [8] - 13:17, 14:18, 18:13, 18:14, 19:5, 22:2, 22:4<br>**Stars** [1] - 2:5<br>**started** [1] - 18:24<br>**starting** [1] - 3:7<br>**state** [1] - 3:7 | **statement** [5] - 8:4, 10:16, 20:10, 20:20, 24:17<br>**statements** [2] - 13:12, 20:21<br>**step** [1] - 10:11<br>**stick** [2] - 6:5, 21:25<br>**still** [10] - 4:20, 7:22, 8:8, 10:13, 10:15, 11:19, 12:7, 15:14, 22:9<br>**stipulation** [1] - 8:14<br>**subject** [3] - 18:13, 18:14, 23:24<br>**submission** [1] - 25:19<br>**subscriber** [1] - 22:19<br>**subscribers** [3] - 22:16, 22:18, 22:19<br>**subscription** [3] - 18:21, 19:4, 22:15<br>**subscription-based** [1] - 19:4<br>**subscriptions** [3] - 10:8, 11:12, 22:21<br>**substantial** [5] - 10:17, 10:18, 10:24, 11:23, 12:4<br>**substantive** [1] - 13:20<br>**sue** [1] - 21:17<br>**sufficiency** [1] - 4:22<br>**sufficient** [9] - 11:16, 13:16, 14:4, 15:1, 15:14, 15:15, 16:2, 18:11, 23:7<br>**sufficiently** [9] - 4:16, 5:20, 6:6, 8:11, 9:4, 9:14, 10:6, 11:3, 25:9<br>**sugar** [1] - 16:8<br>**Suite** [1] - 2:9<br>**summary** [2] - 15:1, 15:2<br>**Superior** [1] - 23:17<br>**Supp** [2] - 16:13, 17:24<br>**supplement** [2] - 7:5, 13:15<br>**supplements** [1] - 13:13<br>**support** [4] - 10:16, 11:2, 18:16, 20:24<br>**supporting** [1] - 15:12<br>**surprise** [1] - 4:8<br>**survive** [4] - 12:20, 16:3, 17:10, 17:11<br>**system** [1] - 19:4 | **T**<br><br>**target** [2] - 19:17, 19:20<br>**teeth** [1] - 22:17<br>**tendency** [1] - 12:17<br>**tentative** [8] - 3:23, 4:5, 4:15, 4:18, 6:5, 6:11, 21:13, 24:9<br>**term** [7] - 5:8, 5:10, 23:9, 23:10, 23:11, 23:12, 24:2<br>**terminated** [1] - 23:21<br>**terminology** [1] - 9:8<br>**terms** [12] - 4:24, 5:15, 5:19, 6:25, 7:6, 7:9, 7:12, 9:4, 9:7, 9:11, 9:12, 9:13<br>**testified** [1] - 23:4<br>**THE** [17] - 3:5, 3:15, 3:16, 3:17, 4:2, 9:2, 12:8, 13:3, 14:20, 19:7, 19:11, 22:25, 24:7, 24:22, 24:24, 25:1, 25:18<br>**themselves** [1] - 9:18<br>**theory** [3] - 25:4, 25:11<br>**thereof** [1] - 7:14<br>**they've** [4] - 8:19, 16:1, 20:23, 21:2<br>**THIRD** [1] - 2:3<br>**third** [7] - 3:10, 3:20, 4:19, 10:10, 14:6, 19:3, 22:14<br>**Third** [4] - 3:22, 5:2, 6:24, 14:9<br>**THIRD-PARTY** [1] - 2:3<br>**third-party** [3] - 3:10, 3:20, 22:14<br>**thorough** [1] - 4:6<br>**three** [3] - 5:12, 5:17, 20:8<br>**threshold** [1] - 22:3<br>**throughout** [1] - 6:8<br>**ties** [1] - 22:7<br>**timely** [2] - 7:11, 24:11<br>**today** [2] - 9:24, 12:24<br>**took** [1] - 21:20<br>**tort** [1] - 22:12<br>**Tortilla** [2] - 16:4, 16:6<br>**tortious** [2] - 18:9, 21:23<br>**tried** [1] - 21:24<br>**true** [2] - 6:19, 17:7<br>**trying** [1] - 23:3<br>**turn** [1] - 11:5<br>**turning** [1] - 21:11<br>**twice** [1] - 14:4 | **two** [14] - 3:18, 4:9, 5:11, 5:17, 5:21, 6:1, 10:13, 10:15, 11:2, 11:22, 12:4, 12:9, 12:23, 24:10<br>**type** [1] - 6:12<br>**typical** [3] - 5:11, 5:15, 9:6<br><br>**U**<br><br>**ultimate** [1] - 8:9<br>**unclear** [1] - 9:5<br>**under** [7] - 7:1, 7:11, 13:17, 14:16, 19:4, 22:22, 25:19<br>**understood** [2] - 10:1, 13:20<br>**undisputed** [1] - 17:7<br>**unless** [1] - 19:6<br>**unreported** [1] - 16:14<br>**up** [1] - 8:12<br>**upset** [1] - 19:1<br>**uses** [1] - 5:14<br><br>**V**<br><br>**vague** [2] - 5:8, 5:14<br>**vaguely** [1] - 22:15<br>**versus** [2] - 3:6, 16:12<br>**VIRUN** [1] - 2:3<br>**Virun** [28] - 3:6, 3:10, 4:21, 5:1, 5:16, 5:17, 6:11, 7:1, 7:4, 7:5, 7:10, 14:1, 14:10, 14:11, 14:13, 14:21, 15:6, 15:22, 16:17, 16:25, 17:18, 17:19, 20:17, 21:15, 21:17, 23:10, 24:14<br>**Virun's** [3] - 7:14, 19:23, 20:15<br>**vitamin** [3] - 10:9, 11:13, 22:19<br><br>**W**<br><br>**wants** [3] - 21:7, 25:5, 25:8<br>**week** [1] - 20:7<br>**weeks** [2] - 5:12, 5:17<br>**whereas** [1] - 12:17<br>**witness** [1] - 23:4<br>**worded** [1] - 12:20<br>**writes** [1] - 13:23<br>**written** [1] - 8:20<br><br>**Y**<br><br>**York** [1] - 23:19 | **yourself** [1] - 16:10 |